THE STATE OF IOWA, Appellee, v. A. L. SNOW, Appellant.

1. **Constitutional Law** : LEGISLATIVE ENACTMENTS : TITLE. The subject of a legislative act prohibiting the sale. of any article intended for use as lard, which contains any ingredient but the pure fat of healthy swine, unless it be labeled " compound lard," and designate the name and proportion of each ingredient contained therein, is sufficiently described in the title, "An act to prevent fraud in the sale of lard, and to provide punishment for the violation thereof."

2. ————: POLICE POWER : REGULATION OF TRADE. Such an act as above described is within the police powers of the state, and is not in violation of the constitution of Iowa, article 1, section 9 nor of the constitution of the United States, fourteenth amendment, article 1.

3. **Information** : SALE OF COMPOUND LARD. An information charging a person with selling a bucket or package filled with an article intended for use as lard, which contained other ingredients than the pure fat of healthy swine, and which bucket or package did not bear on the top or outer side thereof the name and proportion, in pounds and fractional parts, of each ingredient contained therein, sufficiently charges an offense under the above statute.

*Appeal from Pottawattamie District Court.*—HON. C. F. LOOFBOUROW, Judge.

FRIDAY, JANUARY 23, 1891.

THE defendant was convicted upon an information before a justice of the peace for unlawfully selling adulterated lard. An appeal was taken to the district court, where he was again found guilty of the charge, and he appeals to this court.

*Wright, Baldwin & Haldane*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROTHROCK, J.—I.  The information charged the
defendant with a violation of chapter 79, of the Acts
of the Twenty-second General Assembly.

1. CONSTITU-
TIONAL law:
legislative
enactments:
title.

The following is a copy of the title of
the act and of the first section thereof:
"An act to prevent fraud in the sale
of lard, and to provide punishment for
the violation thereof.  Be it enacted by the general
assembly of the state of Iowa:  Section 1.  No manu-
facturer or other person or persons shall sell, deliver,
prepare, put up, expose or offer for sale any lard, or
any article intended for use as lard, which contains any
ingredient but the pure fat of healthy swine, in any
tierce, bucket, pail, package or other vessel or wrap-
per, or under any label bearing the words 'pure,'
'refined,' 'family,' or either of said words, alone, or in
combination with other words of like import, unless
every tierce, bucket, pail, package or other vessel,
wrapper or label, in or under which said article is sold,
delivered, prepared, put up, exposed or offered for
sale, bears on the top or outer side thereof, in letters
not less than one-half inch in length, and plainly
exposed to view, the words 'compound lard,' and the
name and proportion, in pounds and fractional parts
thereof, of each ingredient contained therein."  It is
claimed that the act is unconstitutional because it is in
violation of section 29, article 3, of the constitution,
which section is as follows:  "Every act shall embrace
but one subject, and matters properly connected there-
with, which subject shall be expressed in the title.
But if any subject shall be embraced in an act
which shall not be expressed in the title such act
shall be void only as to so much thereof as shall not be
expressed in the title."  It is argued at great length
that the subject of the act is not expressed in the title,
because no reference is made therein to the sale of
adulterated lard.  It is claimed that lard is the fat of
swine after being melted and separated from the flesh,
and that any adulteration of lard by the admixture of

other ingredients constitutes a commodity which is not lard. The body of the act prohibits the sale of the admixture without the specified labels. It is contended that, as the prohibited sales are for a substance or articles that is not lard, the subject of the act is not embraced in the title. It is not to be denied that, in the dictionary definition, lard is defined to be the fat of swine. It is contended that the commercial meaning is the same.

We have, we think, fairly stated the grounds upon which counsel contend that the act in question is violative of the constitutional provisions above cited. It is true that the definition of lard is correctly stated by counsel, but when it is attempted to apply technical definitions of words in construing statutes, for the purpose of overthrowing the statute, courts ought to proceed with caution. It is not denied that certain substitutes for pure lard, made up of cotton-seed oil, and possibly other cheaper ingredients, are put upon the market for sale as lard. The title of the act is: " To prevent fraud in the sale of lard." The object of the constitutional provision is to advise the public by the title of the statute of the subject of the legislation, and to prevent provisions from being inserted therein which might escape public attention. The title of this act is a plain statement that it is to prevent fraud in the sale of lard, and the body of the act ought not to be limited to any technical definitions of that word. Counsel for defendant cite a large number of authorities in which it has been held that statutes are void because the subject of legislation is not properly stated in the title. We do not deem it necessary to cite nor to refer to these cases further than to say that they involve questions such as that where, in the title, the subject is stated to be the sale of intoxicating liquors, the act cannot include a provision punishing a person for becoming intoxicated, and an act regulating the sale of intoxicating liquors by its title will not authorize the enactment of provisions therein prohibiting such sale.

In the act under consideration we discover no such
departure from the subject stated in the title.

II.  It is further contended that the act is uncon-
stitutional because it is an unwarranted interference
with trade in an article of food of daily
consumption, and is, therefore, in contra-
vention of that clause of the constitution of
the state which provides that no person
shall be deprived of life, liberty or property without
due process of law, and that it is in violation of the
fourteenth amendment of the constitution of the United
States, which provides "that no state shall make or
enforce any law which shall abridge the privileges or
immunities of citizens of the United States, nor shall
any state deprive any person of life, liberty or prop-
erty without due process of law, nor deny to any per-
son within its jurisdiction the equal protection of the
law."  Counsel for the defendant cite, in support of
their argument, the case of *People v. Marx*, 99 N. Y.
377, as exactly in point on this question.  That was a
case founded upon a statute which absolutely forbade
the sale of oleomargarine as an article of food.  The
testimony in the case showed that the article sold was
not injurious or unwholesome, and that its constituent
parts were practically the same as those of butter.
The act was held to be unconstitutional and void.  It
will be observed, however, that there is a marked dis-
tinction between that case and this.  In this case the
law does not prohibit the sale of the article.  The act
is a mere regulation by which the public may know by
inspection of the package the ingredients used in its
preparation.  If it resembles lard, it is surely no
infringement of any right of the grocery-man or dealer
to require him to make known to the public, in a
proper manner, the constituent parts of the article
which he offers for sale.  Such a law is clearly within
the police power of the state.  It is said in the case of
*City of Council Bluffs v. Railway Co.*, 45 Iowa, 338:
" We fully recognize the doctrine that the state, by
virtue of its police power, may enact all such laws as

*2. ——: police
power: regu-
lation of
trade.*

may be necessary or proper to protects its citizens in their persons, health and property, to guard them against fraud, impositions and oppressions, even where such laws may, in some respects, affect persons or corporations engaged in the .transportation of foreign or interstate commerce, such as quarantine and health laws, all laws to prevent the commission of felonies, misdemeanors or other breaches of the peace." It is apparent, from an analysis of the act under consideration, that it is not an infringement of the right of any citizen. Its provisions are, in substance, just this : If a dealer offers for sale an article intended to be used for lard, he must label it so that the public may not be deceived or defrauded by paying the value of pure lard for a cheaper article. If the dealer will label the article so that the public may know what they purchase, he may deal in it with impunity. This much the lawmaking power may demand of him without impairing any right of property, or the exercise of any lawful business.

III. It is claimed that the information upon which the prosecution is based does not charge a violation of the statute. Although the statute is somewhat obscure in its meaning, it is quite plain that the penalty therein provided for is incurred, if a person sells a bucket or package filled with an article intended for use as lard, which contains other ingredients than the pure fat of healthy swine, and which bucket or package does not bear on the top or outer side thereof the name and proportion in pounds and fractional parts thereof, of each ingredient contained therein. This is the substance of the information. If the bucket alleged to have been sold did not bear a statement of the ingredients, the offense was complete, no matter whether it was stamped " pure, " " refined, " " family " or "compound" lard. The information is in the language of the statute, so far as it is necessary to constitute the offense, and that this is sufficient has been many times decided by this court. Affirmed.

3. Information: sale of compound lard.