SAVAGE v. SCOVELL.

(Circuit Court, E. D. Kentucky. July 16, 1908.)

1. Food (§ 2*)—State Regulations—"Food."

The fact that a "food" may also be a medicine or possess medicinal properties does not exempt it from the operation of a state statute regulating the sale of foods.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 3, p. 2856.]

2. Food (§ 2*)—"Condiment."

A "condiment" is a food and not a medicine.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 2.*]

3. Food (§ 2*)—Statutory Regulations.

A manufacturer, who designates an article made and sold by him as a food, is estopped to deny that it is such within the meaning of a statute regulating the sale of food.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 2.*]

4. Food (§ 2*)—Statutory Regulations—Articles Within Statute—"Food or Condiment."

The "International stock food" is a "food or condiment" within the meaning of the Kentucky pure food law (Laws 1906, p. 282, c. 48), and its sale is subject to regulation thereunder.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 2.*]

5. Food (§ 1*)—State Inspection Laws—Constitutionality of Kentucky Statute.

The Kentucky pure food law (Laws 1906, p. 282, c. 48), which requires articles of food sold in the state to be labeled to disclose their ingredients and authorizes the director of the agricultural experiment station to take samples from each package for analysis, is not unconstitutional, but is valid as an inspection law. Nor was it rendered invalid by the enactment of the national food and drugs act, which does not conflict with its provisions.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 1.*]

In Equity. On motion for preliminary injunction.

J. N. Elliott, for complainant.

N. B. Hays, Ky. Atty. Gen., R. M. Allen, and Chas. H. Morris, for defendant.

COCHRAN, District Judge. This cause has been submitted on motion for a preliminary injunction and demurrers, special and general, to the bill.

It is claimed by plaintiff that he is entitled to the relief he seeks because the article manufactured and sold by him is not covered by the Kentucky act involved herein. Laws 1906, p. 282, c. 48. He maintains that said act covers only that which is a food, and said article is not a food, but a medicine. I think the distinction between what is a "food" and what is a "medicine" is clear, and there can be no question that said act covers the former, and not the latter. A "condiment" is a food, and not a medicine. It is therefore covered by the act, and that by express terms, but the act is not prevented from covering that

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which is a food because it is a medicine also. Conceivably an article may be a food and a medicine both, and that when used in the same way, i. e., when taken internally. Such an article is covered by the act notwithstanding its medicinal quality.

I have considered the evidence carefully and have reached the conclusion that the article of plaintiff's manufacture is a food—probably it is better to say that it is a condiment—and that such is the effect of his representations and claims in regard thereto. Undoubtedly he claims it to be a medicine also, and it may be said that the stress of his claims lies here; but in a real sense it must be said to be at least a "condimental food," and hence that it is covered by the act. Plaintiff is in no position to complain of his article being treated as what he calls it. The evidence shows that his action in naming it a food was not purely arbitrary, but based on reality.

The act itself is not unconstitutional. It is an inspection law, and the states have the right to pass inspection laws. This is expressly recognized in the second clause, § 10, art. 1 of the federal Constitution; but, this apart, a state has power to enact inspection laws, even though it affects interstate commerce, at least in the absence of congressional legislation making a difference in the situation. This is on the ground that Congress by its nonaction has impliedly consented to the enactment thereof, i. e., Congress, instead of regulating interstate commerce in such particular directly, does so through the state Legislature enacting the law. At the time of the passage of the Kentucky act and its going into force, the federal pure food law (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1907, p. 928]) had not been enacted.

The position that the act is valid as an inspection law finds direct support in the case of Patapsco Guano Co. v. Board of Agriculture, 171 U. S. 351, 18 Sup. Ct. 862, 43 L. Ed. 191. The case of Bowman v. Chicago & N. W. R. Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700, is not to the contrary. The law involved there was not an inspection law.

It is claimed that said act is unconstitutional, in that it authorizes the director of the Agricultural Experiment Station to take as much feeding stuff as he might desire, provided he confined himself to two pounds from every package. I do not think that such is the meaning of this provision of the act. An inspection law can properly provide the taking of so much of an article covered by it as is necessary for analysis in order to determine its true nature. This is just as proper as a fee for the inspection. The meaning of this act is that said director may take as much, not as he desires, but as much as is necessary for analysis; but in no event shall it exceed two pounds. It was not intended that the director should have the right to take two pounds in every instance out of every package, whether necessary to make an analysis or not. It is not alleged that in the execution of the law defendant has taken, or intends to take, more from the packages containing plaintiff's article than is necessary to make an analysis.

Again, it is urged that said act has been done away with by the federal law before referred to. It is questionable whether Congress can affect a state inspection law simply by legislation covering the same

subject—whether in order to do so it must not enact legislation under clause 2, § 10, art. 1, of the federal Constitution, expressly revising and controlling same. But, this apart, the two laws do not cover the same territory. The federal law simply covers the subject of adulteration and misbranding. The state law has nothing to do with either. It has to do with the subject of disclosing the ingredients of the articles covered by it. Its policy is to compel a statement of ingredients so that purchasers thereof in Kentucky may know exactly what they are buying. There may be no adulteration or misbranding, i. e., no violation of the federal law, and yet there may be a violation of the state law in not disclosing ingredients.

It follows therefore that the motion for a preliminary injunction must be denied.

Inasmuch as the bill alleges that plaintiff's article is a medicine, and not a food or condiment, and hence not covered by the act, the bill sets forth a good cause of action, unless defendant's point that this is a suit against the state of Kentucky, and hence within the prohibition of the eleventh amendment, is well taken. I do not think that this point is well taken. This is not a suit against the state, but against M. A. Scovell. If the plaintiff's article is not a food, but a medicine, as alleged in the bill, then said defendant has no right to set on foot prosecutions against plaintiff and dealers in his article under said act, and he owes plaintiff a duty not to do so, and plaintiff is entitled to have this duty performed. I have covered this whole subject in a paper read before the Kentucky State Bar Association, on July 8, 1908, at Louisville, to which I refer as setting forth fully my views on it. It took considerable time to prepare this paper, and this accounts somewhat for my delay in disposing of this case. The subject was in so much confusion that I could not handle a case successfully involving the question of maintainability of suits against the executive officers of a state without a thorough investigation on my own part covering the whole ground.

The demurrers to the bill are overruled.

If parties agree, the cause can be submitted on bill, answer, and affidavits, as was done in the case of Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604. If so, a decree will be entered dismissing plaintiff's bill at his costs. Of course, the temporary restraining order granted herein ceases as of this date to be of any force.