STATE v. W. S. BUCK MERCANTILE CO.
(No. 1426; Feb. 28, 1928; 264 Pac. 1023)

48

50

*R. S. Mentzer, W. C. Mentzer,* and *W. O. Wilson,* Attorney General, for plaintiff.

*Edward T. Lazear,* for defendants.

BLUME, Chief Justice.

An information was filed in this case by the State against the W. S. Buck Mercantile Company, a Corporation, and J. W. Brown, defendants, charging them with violating the provisions of Chapter 96, of the 1925 Session Laws of the State of Wyoming, in that they unlawfully offered for sale and sold a first-hand, unused blanket containing wool, without placing on the blanket a label showing the true character and quantity of the wool content of the blanket or a label showing that information as to the true quantity of the virgin wool content of the blanket so offered for sale and sold had been refused. The defendants entered a plea of guilty, but filed a motion in arrest of judgment, alleging the unconstitutionality of the law above mentioned in various particulars, and the District Court thereupon duly certified to this court the following questions: 1. Whether or not the law above mentioned is in conflict with Section 1 of

the 14th amendment to the Constitution of the United States, providing that "no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law." 2. Whether or not Chapter 96 above mentioned is in conflict with Section 8 of Article I of the Constitution of the United States, providing that Congress shall have power "to regulate commerce with foreign nations and among the several states and with the Indian tribes." 3. Whether Chapter 96 above mentioned is in conflict with Section 6 of Article I of the Constitution of this state, providing that "no person shall be deprived of life, liberty or property without due process of law," or with Section 7 of Article I of the Constitution of this state, providing: "Absolute arbitrary power over the lives, liberty or property of freemen exists nowhere in a republic, not even in the largest majority."

Section 1 of Chapter 96 of the Session Laws of 1925, known as the "Truth in Fabrics Act," in controversy in this case, reads as follows, to-wit:

"Every person, firm or corporation who shall manufacture for sale, or have in his possession for the purpose of sale, or who shall sell or offer for sale, in this State, any yarn, cloth, fabric, garment or article of apparel, containing wool or purporting to contain wool, or who shall display in this State any sample of yarn, cloth, fabric, garment or article of apparel, containing wool or purporting to contain wool, for the purpose of soliciting orders for the sale of yarn, cloth, fabrics, garments or articles of apparel, shall place thereon a conspicuous label showing the true character and quantity of the wool content thereof, and which said label shall be in clear, legible, bold-faced type, and shall be in one of the four following forms:
1. "This article is composed of all virgin wool."
2. "This article contains not less than................per cent virgin wool."
3. "This article contains no virgin wool."

4. ''The manufacturer and wholesale vendor of this article upon request have refused to give information as to the true quantity of the virgin wool content of this article.''

Each form of said label when used as herein provided shall be followed by the name of the person, firm or corporation placing the same on the said labeled article, printed in clear, legible, bold-faced type.

The term 'virgin wool,' as used in this Act, is wool that previous to its use in the article required to be labeled hereunder has never been spun, woven or knitted into any other yarn, fabric or cloth than that composing the said article. In the event that any article is labeled in the form indicated in label No. 2 herein, the blank in such form shall be filled in with some certain percentage. Provided, however, that in labeling any garment or article of apparel which contains lining, facing or trimming, or silk yarn used solely for decorative purposes, the label required to be placed thereon shall not be taken to refer, and shall not refer, to the lining or facing or trimming, or yarn used solely for decorative purposes, or the percentage or percentages of wool contained therein. Provided, further, that this Act shall not be construed as applying to or requiring the labeling of used, worn and second-hand garments; used, worn and second-hand articles of apparel, or rags.''

Section 2 of the Act provides for penalties for the violation thereof and that a retail dealer of goods contemplated in the Act who has placed a label on such goods corresponding with the written or printed information obtained in good faith from a manufacturer, jobber or wholesaler shall not be liable for such penalties. Section 3 of the Act provides that if any portion of the Act is held to be unconstitutional the remainder shall continue in force and effect.

1. The foregoing legislation is an attempt to exercise the police power, this state apparently being the first which has attempted to exercise it in connection with the sale of woolen goods, and one of the main objections raised is that an attempt to regulate the sale of such goods is an arbitrary interference with private business and that the welfare of the people is in no manner advanced thereby; in other words, that the attempted legislation does not come within

the purview of the police power. The objects of that power may be the order, safety, health, morals and general welfare of society. The prevention of fraud is included therein. 12 C. J. 920; 6 R. C. L. 208. It may be that the law in question is unwise, but we cannot substitute our judgment for that of the legislature, unless, perchance, we could say that no evil may be presumed to exist which needs a remedy. And by an evil is not necessarily meant some definite injury, but "obstacles to a greater public welfare." Armour & Co. v. North Dakota, 240 U. S. 510, 36 Sup. Ct. 440. The legislature is ordinarily the sole judge of the policy, wisdom and expediency of statutes enacted pursuant to the police power, and if the merchants of this state question that wisdom or expediency, relief on that ground can, generally, be had only at the hands of the body which enacted the law. The legislature must be presumed to have known the needs of the state and to have enacted the law in question for the greater welfare of the people as a whole rather than for the benefit of the woolgrowers. There is nothing in the record before us to overcome that presumption. And if the law in controversy has a tendency to advance the welfare of the people, we cannot declare it to be unconstitutional, unless we can say that it is unjustly or unlawfully discriminatory by making unjustifiable classifications, granting unlawful exemptions, denying citizens of other states the same privileges that are accorded to citizens of this state, or, perhaps, otherwise, or unless it and the methods of regulations therein adopted are unreasonable so as to make compliance therewith oppressive or impracticable. 6 R. C. L. 242-244; 12 C. J. 932-934; Schmidinger v. Chicago, 226 U. S. 578, 57 L. Ed. 364, 33 Sup. Ct. 182; Allion v. Toledo, 99 Oh. St. 416, 124 N. E. 237, 6 A. L. R. 427; Parrott & Co. v. Benson, 144 Wash. 117, 194 Pac. 986; Re Williams, 79 Kan. 212, 98 Pac. 777; Overt v. State, (Tex. Cr.) 260 S. W. 856. The means adopted to carry the purpose of the law into effect, need not be the best; the test of reasonableness is met, if they are fairly appro-

priate under all the circumstances. Weksler v. Chicago, 317 Ill. 278; 148 N. E. 47. And in considering these various questions, we must bear in mind the fundamental rule, stated by the courts over and over again, and stated by this court, that a law will not be declared unconstitutional unless the unconstitutionality is clear. State v. Snyder, Treasurer, 29 Wyo. 163, 179. With these principles in mind, let us proceed.

Numerous acts have been adopted from time to time by the legislatures of the various states and by the congress of the United States, interfering with private business to a more or less extent in order to prevent cheating, imposition and deceit. The Bulk Sales laws and the Blue Sky laws, adopted in many jurisdictions, furnish us with illustrations. Laws regulating weights and measures have been uniformly upheld. Note, Ann. Cas. 1912 C. 251. Regulations requiring commodities to be sold in specified quantities or weights have in nearly all cases received the approbation of the courts of the country, including the Supreme Court of the United States. Note, 6 A. L. R. 429. Labeling acts of various kinds have at numerous times been upheld. That has been true, for instance, with laws requiring labels to show weights and measures, and while in a few instances particular requirements as to what the label should show, have been considered to be unreasonable, such legislative acts have ordinarily been upheld as valid. Schmidinger v. Chicago, 226 U. S. 578, 57 L. Ed. 364, 33 Sup. Ct. 182; Armour & Co. v. North Dakota, 240 U. S. 510, 36 Sup. Ct. 440; Note, 40 L. R. A. N. S. 878 and 879. On this point, the Supreme Court of Washington, in the case of City v. Goldsmith, 73 Wash. 54, 131 Pac. 456, said as follows:

"If a city has power to regulate weights and measures, it has the power to provide what that regulation shall be, how the true weight and measure shall be ascertained, and it is going but a step further to say how it shall be made known or disclosed to the consumer. The power to require

the true weight or measure to be stated on the container is, it seems to us, so clearly implied in and incident to the power to regulate that it must be held to exist.''

So it may be said that it is but a step further, and that a short one, for a law to require the seller to disclose the ingredients of the goods which he sells or offers for sale. And laws requiring the contents of certain goods to be shown by label, as in the law involved in the case at bar, have generally been approved, the courts holding that a purchaser has a right to know the contents of the goods which he buys and that a law requiring a seller to disclose such contents does not deprive him of any constitutional rights. One of the earliest cases on the subject is Palmer v. State, 39 Oh. St. 236, decided in 1883, in which the court upheld a law as a valid exercise of the police power, which required butter not made of pure cream or milk to be labeled showing the ingredients, the court saying in part:

''Those who buy food have a right to know what they buy and to have the means of judging for themselves as to its quality or value.''

Three years later the Supreme Court of Minnesota, in the case of Stolz v. Thompson, 44 Minn. 271, passed upon the validity of a statute which required that if baking powder containing alum was offered for sale it should have a label stating that fact. The court held the requirement reasonable and without constitutional objections, and said in part:

''This statute does not prohibit the sale of such compounds. The owner is not deprived of his property, nor denied the equal protection of the laws by being required to disclose the real nature or ingredients of the commodity which he exposes for sale. No man has the right, protected by the constitution from legislative interference, to keep secret the composition of such goods in order that others may be induced to purchase and use what they would consider to be hurtful, and what they would not knowingly

purchase or use. The owner of such property may be lawfully required as a matter of proper police regulation, for the benefit of the people in general, to sell it for what it actually is and upon its own merits, and is not entitled, as a matter of constitutional right, to the benefit of any additional market value which he may secure by concealing its true character.''

In State v. Asleasen, 50 Minn. 5, it appears that the law required lard substitutes to be labeled, showing the names and approximate portions of the several constituents contained in the mixture. The court upheld the law as a valid exercise of the police power, saying in part:

''The legislature has seen fit to require the seller of these lard substitutes to label the article which he sells with what for convenience we may call a quantitative analysis of its ingredients and to require of the seller of any article of food prepared with such lard substitute to give notice of the fact to the purchaser, so that he may know just what he is buying. This certainly does not deprive the seller of his property without due process of law. No man has a constitutional right to keep secret the composition of substances which he sells to the public as articles of food. Such regulations do certainly have some real or substantial relation to the objects aimed at, to-wit, as expressed in the title of the act, 'to prevent fraud and to preserve the public health.' They do not impair any fundamental rights of life, liberty or property.''

In the case of State v. Snow, 81 Ia. 642, 47 N. W. 777, it appears that the legislature had passed an act requiring any article intended for use as lard which contained any ingredient but the pure fat of healthy swine to be marked ''Compound Lard.'' The Supreme Court, in upholding the act, said in part as follows:

''The act is a mere regulation by which the public may know by inspection of the package the ingredients used in its preparation. If it resembles lard, it is surely no infringement of any right of the grocery man or dealer to require him to make known to the public in a proper manner

the constituent parts of the article which he offers for sale. Such a law is clearly within the police power of the state. It is said in the case of City of Council Bluffs v. Railroad Company, 45 Iowa 338, 'We fully recognize the doctrine that the state, by virtue of its police power, may enact all such laws as may be necessary or proper to protect its citizens in their persons, health and property, to guard them against fraud, impositions and oppressions, even where such laws may in some respects affect persons or corporations engaged in the transportation of foreign or interstate commerce, such as quarantine and health laws, all laws to prevent the commission of felonies, misdemeanors or other breaches of the peace.' It is apparent, from an analysis of the act under consideration, that it is not an infringement of the right of any citizen. Its provisions are in substance just this, if a dealer offers for sale an article intended to be used for lard, he must label it so that the public may not be deceived or defrauded by paying the value of pure lard for a cheaper article. If a dealer will label the article so that the public may know what they purchase, he may deal in it with impunity. This much the law-making power may demand of him without impairing any right of property or the exercise of any lawful business.''

In McDermott v. State, 143 Wis. 8, 121 N. W. 888, 21 Ann. Cas. 1315, the court had under consideration an act of the legislature requiring syrup and molasses containing other ingredients to be labeled so as to show the contents. The court said in part:

''It will be observed that the statute of this state does not prohibit the sale or traffic in the article sold by the defendants, but seeks to regulate the traffic therein to the extent of prescribing how the packages shall be labeled and branded to afford persons information as to the kinds and proportions of the ingredients composing the mixture. Its evident purpose is to prevent deception and to promote fair dealing in the sale of an article of food. If the regulation provided by the state tends to correct an actual evil in the traffic by which the purchasers of an article of food are being deceived into buying something which it in fact is not, then the state acted within its appropriate field under the police power, and the law cannot be said to be invalid for

want of power in the state to deal with the subject. The right of the state to legislate on this subject under such circumstances is well recognized and established.''

In the case of Parrott Company v. Benson, (Wash.) 194 Pac. 986, the court said:

''We cannot hold anything to be unjust discrimination or unreasonable restriction which requires merchandise to be sold for just what it is and prevents its sale as something other than what it is.''

In the case of State v. McKay, 137 Tenn. 280, 193 S. W. 99, a law requiring, among other things, a label to be appended to seed offered for sale, showing the purity thereof and the kind and percentage of impurities therein was upheld as constitutional. In the case of Heath & M. Co. v. Worst, 207 U. S. 338, 52 L. Ed. 236, 28 Sup. Ct. 114, a statute of North Dakota was construed which, among other things, required paint, or a compound thereof, to be labeled, showing the true percentage of each mineral constituent therein contained. The requirement was made to prevent fraud. The contention was that the manufacturers were deprived of their property and liberty without due process of law, and further, that they were denied the equal protection of the laws, because, among other things, a discrimination was made between mixed paints and paste paints. These objections were overruled and the statute was upheld. And in the case of Corn Products Refining Company v. Eddy, 249 U. S. 427, 63 L. Ed. 689, 39 Sup. Ct. 325, the court upheld a law of the state of Kansas requiring a label showing the ingredients of proprietary syrup and made this significant remark:

''It is too plain for argument that a manufacturer or vendor has no constitutional right to sell goods without giving to the purchaser fair information of what it is that is being sold. The right of a manufacturer to maintain secrecy as to his compounds and process must be held subject

to the right of the state in the exercise of its police power and in promotion of fair dealing to require that the nature of the product be fairly set forth.''

Cases similar in effect to the foregoing are Savage v. Jones, 225 U. S. 501, 56 L. Ed. 1182, 32 Sup. Ct. 715; Standard Stock Food Co. v. Wright, 225 U. S. 540, 56 L. ed. 1197, 32 Sup. Ct. 784; American Linseed Oil Co. v. Wheaton, 25 So. Dak. 60, 125 N. W. 127; Steiner & Sons v. Ray, 84 Ala. 93, 4 So. 172, 5 Am. St. Rep. 332 (requiring fertilizer labels); Alcorn Cot. Oil Co. v. State, 100 Miss. 295, 56 So. 397; Savage v. Scovell, 171 Fed. 566; American Linseed Oil Co. v. Crumbine, (C. C. A.) 209 Fed. 332; and see note 40 A. L. R. 876 to 878.

The act in question in the case at bar requires the seller to disclose the character of the woolen goods which he sells. We can see no vital distinction between that requirement and the various requirements disclosed in the laws discussed in the cases above mentioned. It is true that some of these laws aimed at the conservation of health, as well as at the prevention of fraud. But that does not make the cases any the less applicable here. The prevention of fraud is just as legitimate an object of the police power as the conservation of health, and it is clear that the courts, in later years at least, have drawn no distinction between these objects when considering labeling laws, as is particularly noticeable by the cases which have upheld legislative acts which have required the labeling of fertilizers, paints and seeds. We think we may reasonably presume that virgin wool is stronger and most lasting than wool that has been in use previously, commonly known as ''shoddy,'' and that a suit of clothes, for instance, composed wholly of virgin wool is ordinarily much more desirable than a suit of clothes manufactured in whole or in part out of shoddy. The legislature, doubtless, had reasonable grounds to believe that few persons know, when buying woolen goods, whether the goods are composed of virgin wool or shoddy or both, and that the average individual is easily defrauded by reason of that

fact. We must assume that the legislature thought that the situation demanded a remedy, and that the welfare of the people of the state would be advanced thereby. We cannot say, particularly without any evidence on the point, that the legislature was unjustified in these assumptions.

We are not impressed with the argument of counsel for the defendants that it is common knowledge that people are not interested in knowing how much virgin wool is contained in the goods bought by them. Counsel refers to a cover for an automobile as an illustration. Now when a man buys such cover, he buys it to keep his automobile warm and to have it last as long as possible. If he pays for the best, he is entitled to know that he is getting the best, and it would be contrary to human nature if he were not interested in that fact. The same thing applies to other woolen goods. Counsel says that clothing is the one thing which is purchased with an ''eye to beauty, color, design and harmony, and with utter disregard for any chemical constituents,'' meaning by chemical constituents, apparently, the fabrics of which the garment is made. We think counsel is in error. Beauty, color, design, and harmony are ordinarily much desired by a purchaser, but he is also interested to know that these qualities are not temporary but permanent. Whether they are or not depends to some extent at least upon the quality of cloth, and a purchaser is, we think, entitled to determine for himself whether he wants to depend for this permanency upon one kind of cloth or another. We think it clear, if the detailed provisions, which we shall discuss later, are unobjectionable, that a law requiring the disclosure of the amount of virgin wool contained in a woolen article sold or offered for sale comes within the purview of the police power of the state, is not an unreasonable or arbitrary exercise thereof, and deprives no one of his liberty or his rights under the constitution of this state or of the United States. And it is clear from the decisions of the Supreme Court of the United States that such a police regulation in no way

conflicts with the power of the federal government to regulate commerce between various states. Corn Products Refining Company v. Eddy, supra; Savage v. Jones, supra. We should say, however, in that connection, that we do not pass upon the point as to whether such regulation would interfere with interstate commerce as to persons who merely display samples in this state for the purpose of soliciting orders to be filled outside of the state, a question dealt with in the case of Real Silk Mills v. Portland, 268 U. S. 334. Defendants in this case were charged with selling goods and offering them for sale. They are not in any way interested whether the law is constitutional as to persons who merely display samples as above mentioned and we are not, accordingly, at liberty to decide that point. Salt Creek Transportation Co. v. Public Service Commission, (Wyo.) recently decided, and cases cited.

2. We come then to consider some of the details of the Act in question. No special privileges are granted under it to the citizens of this state. No unlawful exemptions are claimed to be granted under it. The requirement of a label showing the contents of woolen goods sold or offered for sale is, as we have already seen, a fairly appropriate method to carry the purposes of the law into effect. It is not asserted that the act, in singling out woolen goods, makes any arbitrary classification. It is true that it is argued that regulations in connection with that class of goods may, if held to be constitutional, lead to the regulation of cotton, silk, rubber and other goods. But on account of the well-known and extensive use of shoddy, woolen goods stand in a class by themselves, and we shall not attempt to decide beforehand the extent to which the exercise of the police power may go in regulating the sale of other textile goods. The fact that the law requires only the designation of the virgin wool contents, instead of requiring also the designation of the

amount of other wool, cannot, we think, be the basis of any valid objection. The legislature evidently thought that it was not necessary to make that additional requirement in order to protect the public. It would be an additional burden which the vendors of woolen goods are not, under the act, asked to bear. And there is nothing in the law which prevents anyone from adding to the label required under the act a statement showing, if that is deemed desirable, the amount of other wool which the article sold may contain. Nor is the argument a valid one that, in case of dispute, it is difficult to tell the amount of virgin wool from other wool. It is true that if compliance with the provisions of the law is impracticable, the law is unreasonable. Overt v. State, (Tex. Crim.) 260 S. W. 856. But there can be no question of ability to comply with the law in the instant case, as will more fully appear from what is said hereafter, for the manufacturer knows or ought to know the contents of the goods made by him, and the objection just stated goes to the question of enforcing the penalties under the law in case of refusal or neglect to comply with its provisions, rather than to the question of ability to comply. It is not at all improbable that many difficulties may be met in the administration of the law. Fraud in labeling particularly may be often committed, may not be easily detected and may be difficult to prove. But we cannot presume that persons will be guilty of intentional fraud, nor have we sufficient knowledge to say that no means or methods exist or will be found to detect and punish it, if committed. These objections, if valid, do not, we think, affect the constitutionality of the law. It is a well known fact that it is difficult to enforce the penalties under many laws, for instance the liquor law, now on the statute books, but the unconstitutionality of these laws for that reason has not heretofore been suggested, and no authorities to that effect have been cited. Such objection goes to the wisdom

of the law, we think, rather than to the constitutionality of it.

The record before us does not show that compliance with the law, that is to say, the labeling of the goods in the manner required by the legislative act in question, is impracticable or would in any way be oppressive, and we shall not anticipate what, if any, disclosures might be made by evidence on the subject. It does not appear that the extra labor and expense that might be necessary in labeling the goods would be burdensome, and so long as the amount thereof remains within reasonable bounds, the constitutionality of the law would not be affected thereby. Armour & Company v. North Dakota, supra; People v. Martin, 197 N. Y. S. 28; see also Lincoln Center v. Linker, 7 Kan. App. 282, 53 Pac. 787. Nor does it appear that compliance with the law is impracticable in other respects. True, we have no factories, and perhaps no wholesalers or jobbers, of clothing in the state at this time, and the statute in question could not, of course, operate directly to bind persons or corporations outside of the state. But a similar situation was presented in a number of the cases already cited. The law binds those who sell goods within the state or offer it for sale therein, and through them will indirectly operate to bind the manufacturers, wholesalers and jobbers without the state. While a man may have a constitutional right to buy woolen goods wherever he pleases, it does not follow that he has the right to sell such goods to the public or offer them for sale, without complying with the law. Refusal or neglect of citizens of other states or countries to comply with reasonable regulations made by this state in virtue of its police power cannot, ordinarily at least, be a justification for citizens within this state to disregard them, and if the manufacturer of woolen goods shipped to this state, but made outside of its limits, or in England or in other foreign countries, chooses not to give the requisite information required under the law, or neglects to do so, the vendor of

such goods within this state must turn to others who are less averse to let the truth be known and are more willing to protect the public against fraud. If it should appear, of course, that none of the manufacturers outside of this state, upon whom the merchants in this state must depend for their woolen goods, would give the requisite information, or possibly, that compliance with the law by the merchants in this state would give a monopoly to certain persons or corporations of the market for woolen goods in Wyoming, a different situation might be presented. But we have no evidence of that fact, and we cannot presume it to exist.

3. The Act here in controversy requires that persons who sell woolen goods or offer them for sale must place one of four labels thereon. The manufacturer knows or should know, as already stated, the amount of virgin wool contained therein, and it follows, accordingly, from what we have said, that the requirement of placing one of the first three labels mentioned in the law thereon is not unreasonable. The legislature has, as an alternative, permitted Label No. 4, reading:

"The manufacturer and wholesale vendor of this article upon request has refused to give information as to the true quantity of the virgin wool content of this article."

It may be true that such a label has a tendency to cast somewhat of an odium upon the goods which it identifies. Regulations with that effect have at times been condemned. Thus it was held in the case of Collins v. New Hampshire, 171 U. S. 30, 18 Sup. Ct. 764, that a regulation requiring oleomargarine to be colored pink is unconstitutional. In the case of People v. Hawkins, 157 N. Y. 1, the court held that a law requiring certain goods to be marked "Convict Made" is unconstitutional. Freund, Police Power, Section 51, says:

"Perhaps it should be said that even when the possibility of deception exists the requirement of particular forms of notice is not legitimate when others are adequate and those insisted upon are plainly intended to prejudice."

Label No. 4, standing by itself, might be held to be objectionable, but it must be construed in the light of the remaining alternative labels permitted, and in the light of the law as a whole. The primary intent and purpose of the law is to have the actual contents of the woolen articles which are sold or offered for sale disclosed, in order that the public may know what it is buying. It is not compulsory to use label No. 4. If the vendors of these goods in this state procure them from manufacturers who, knowing of the law of this state, are willing to be honest and give true information, there will be no necessity to use that label. The argument, accordingly, that a merchant may, under the law, be required to mark a really valuable suit in the same manner as a suit of little value can have no force. There is no necessity, so far as the record discloses, for a merchant of Wyoming to be placed in that position. If, instead of label No. 4, another label were permitted which would simply state that the amount of virgin wool is unknown, it is possible, if not probable, that no honest effort to comply with the primary purpose and intent of the law would be made. The requirement of label No. 4, on the other hand, has a tendency in the opposite direction, and it cannot, accordingly, be held to be unreasonable.

4. The act here in question requires one of the labels specified to be affixed to articles "containing wool" or "purporting to contain wool," when sold or offered for sale. The legislature seemingly believed that the ultimate purpose of the act could be better carried out by requiring all goods containing any wool whatever to be marked, evidently fearing subterfuges if any exemptions were made. No objections are raised herein on that ground, so

we shall pass the point by without further mention. Objections, however, are urged to the phrase "purporting to contain wool," for the reason that the law does not state who is to be the judge of when an article "purports to contain wool." The phrase quoted is clumsily drawn. "Purport," used as a verb, means "to have the appearance or convey the impression of being, meaning or signifying some particular thing; to mean or seem to mean or intend." Webster's New International Dictionary. A law or a letter may "purport" certain things, but it is impossible that an article of clothing or the like should by itself be able to "purport" anything. The "purporting" must come from some other source, as, for instance, a label. We cannot attribute to the legislature an intention to state an absurdity, if a different construction is fairly possible. And we think it clear that the act means to subject to the requirements of the act all goods which, by written or printed label or sign, purport to contain wool. Whether anything more was intended need not be determined. This construction eliminates the objections made to the phraseology above quoted.

Our answer to the questions submitted to us in this case accordingly is, that so far as the record before us discloses, the law in question is not in violation of any of the constitutional provisions above mentioned. We should add, in order not to be misunderstood, that in what we have said we have not in any way considered the bearing of the law on any goods on hand at the time of the enactment of Chapter 96 above mentioned, or any points that might arise in connection therewith, since that subject was not mentioned in the briefs.

KIMBALL and RINER, JJ., concur.