PACIFIC MEAT COMPANY, LIMITED, A HAWAII CORPORATION, ON ITS OWN BEHALF AND ON THE BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND C. Q. YEE HOP & CO., LTD., A HAWAII CORPORATION, ON ITS OWN BEHALF AND ON THE BEHALF OF ALL OTHERS SIMILARLY SITUATED *v.* DR. KENNETH K. OTAGAKI, AS CHAIRMAN AND DIRECTOR OF THE DEPARTMENT OF AGRICULTURE, AND KOSHI TOMONO, ALEXANDER J. NAPIER, STANLEY I. UNTEN, JOHN TEVES, BEN T. MIYAHIRA, RICHARD HENDERSON, DAN CORREIA, AND JAMES P. FERRY, EX-OFFICIO MEMBER, AS MEMBERS OF THE BOARD OF AGRICULTURE OF THE STATE OF HAWAII.

No. 4331.

July 27, 1964.

Tsukiyama, C.J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

OPINION OF THE COURT BY MIZUHA, J.

Act 109, S.L.H. 1961, provides that, for the purpose of notifying the consumer as to its geographic origin, no person shall sell or offer to sell uncooked poultry without a label as to its origin.[1]

Plaintiff-appellee, Pacific Meat Co., Ltd., is a wholesaler of food products. Plaintiff-appellee, C. Q. Yee Hop & Co., Ltd., is a retailer of food products. Plaintiffs initially filed a bill in equity to restrain the enforcement of Act 109, S.L.H. 1961 on the ground that it was unconstitutional. That action was dismissed on the basis that plaintiffs had an adequate remedy at law, *i.e.,* defending a criminal prosecution.

After several months, plaintiffs brought suit for a declaratory judgment.[2] After the filing of an answer, the

---

[1] "SECTION 1. *Notifying consumer.* No person shall sell or offer to sell any uncooked poultry meatbird without a label, as hereinafter described, notifying the purchaser of the geographic origin in which the poultry meatbird was grown. The foregoing provision shall not apply to New York-dress poultry meatbird or to poultry meatbird which is sold to an ultimate consumer at the farm or ranch where the poultry meatbird was grown or to sales subsequent to a sale at retail.

"SECTION 2. *Description of label.* 'Label' means the information required by this Act to be placed on poultry meatbird by means of a stamp, stencil or printing by machine, or by attaching to the immediate package, by sign, handbill, placard or otherwise, and shall be at least two inches by three inches with legible letters or figures of at least one-half of an inch in height and with the words '(insert the geographic origin as either MAINLAND or FOREIGN or LOCAL) GROWN'."

[2] See R.L.H. 1955, § 228-1.

plaintiffs moved for summary judgment. The trial court granted the motion and declared Act 109 unconstitutional and void.

Defendants-appellants contend that Pacific Meat Co., Ltd., is not a proper party to the action, that the trial court was without jurisdiction to entertain this action for a declaratory judgment where the effect is to enjoin the enforcement of a penal statute, and that Act 109, S.L.H. 1961 is constitutional.

Following dismissal of the equity action, plaintiffs advised the predecessors of the defendants[3] as members of the Board of Agriculture of the State of Hawaii, that they would not comply with the labeling requirements of the act. C. Q. Yee Hop & Co., Ltd., was served with notice of violation of the act twice, and, in each instance, refused to agree to comply with the requirements of the act in the future. However, when the present suit was brought no criminal charges had been filed against the plaintiff, C. Q. Yee Hop & Co., Ltd. During the proceeding herein it appeared that the predecessors of the defendants refused to bring criminal proceedings.

Pacific Meat Co., Ltd. has not been served with any notice of violation of the act. Pacific Meat Co., Ltd., has never been in violation of the act and has never been threatened with criminal prosecution. The Attorney General, by opinion 61-60, dated 5 June 1961, advised the predecessors of the defendants that the labeling provisions would apply only to sales to an ultimate consumer either at wholesale or at retail. No allegation was made by Pacific Meat Co., Ltd., that it was in the business of consummating sales to an ultimate consumer. But, it did

---

[3] By stipulation the present chairman and executive director of the Department of Agriculture and the present members of the Board of Agriculture of the State of Hawaii have been substituted for their predecessors.

allege that Act 109 imposes a burden on interstate commerce, that it invades a field of regulation pre-empted by the federal government by the federal Poultry Products Inspection Act, and that the provisions of the said act are in excess of the lawful exercise of the police power of the State of Hawaii. In an affidavit in support of the motion for summary judgment, the President of Pacific Meat Co., Ltd., stated:

> "That said Pacific Meat Company, Limited, has been informed by its retail store customers that such customers will not purchase any poultry or poultry products imported by Pacific Meat Company, Limited, from the mainland United States unless the labels provided for by Act 109, Session Laws of Hawaii 1961, are affixed to each package or container, or furnished, by Pacific Meat Company, Limited, and that the cost of so providing and affixing said labels imposes an additional cost of operation upon said Pacific Meat Company, Limited."

On the basis of the pleadings, as supplemented by this affidavit, Pacific Meat Co., Ltd., was a proper party to this action.

The trial court properly exercised jurisdiction over the complaint in this action for a declaratory judgment. While there are a number of approaches to the matter of declaratory relief as a means of testing the validity of a criminal statute,[4] we prefer the Missouri rule stated in *Liberty Mutual Ins. Co.* v. *Jones*, 344 Mo. 932, 954, 130 S.W. 2d 945, 953, as follows:

> "* * * [T]he use of a declaratory judgment rests in the sound judicial discretion of the court, depending on

---

4 *Dill* v. *Hamilton*, 137 Neb. 723, 291 N.W. 62; *De Veau* v. *Braisted*, 5 App. Div. 2d 603, 174 N.Y.S.2d 596; *Erwin Billiard Parlor* v. *Buckner*, 156 Tenn. 278, 300 S.W. 565; *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 111 A.2d 4; *Woolf* v. *Fuller*, 87 N.H. 64, 174 Atl. 193; *Zeitlin* v. *Arnebergh*, 31 Cal. Rptr. 800, 383 P.2d 152; Annot., 129 A.L.R. 751, 758.

the circumstances; * * * that form of relief is usually unnecessary where a full and adequate remedy is provided by another well-known form of action; * * * the purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations; * * * ordinarily it cannot be utilized as a device to circumvent the general rule that equity will not enjoin the enforcement of a valid criminal statute; neither will it be used to determine in advance the precise rights existing between the public and law violators on particular facts where no special circumstances require it."

Here the statute is *malum prohibitum,* it affects a continuing course of business, and a method of testing the statute was not in fact available in the criminal court because the predecessors of the defendants refused to bring criminal proceedings. There was a clear case for declaratory relief if the statute was invalid.

The trial court in its "Order for Summary Judgment and Judgment" decreed that Act 109, S.L.H. 1961 was unconstitutional, without assigning any reasons as to its unconstitutionality.

In support of the judgment of the trial court, plaintiffs first contend that Act 109 is unconstitutional since the federal government has pre-empted the field by the Poultry Products Inspection Act, 21 U.S.C. 451 *et seq.*

Act 109, S.L.H. 1961, requires that a "sign, handbill, placard or otherwise" be placed on the poultry meatbird, or to the immediate package to inform the customer of the poultry meatbird's geographic origin. This is required on all uncooked poultry meatbird, except New York-dress poultry meatbird, or poultry meatbird "which is sold to an ultimate consumer at the farm or ranch where the

poultry meatbird was grown, or to sales subsequent to a sale at retail."

The legislative history of the act clearly shows the purpose of such labeling requirements.

"The purpose of this bill is to provide for the proper identification of the origin of poultry sold in Hawaii. This is deemed necessary for the protection of the consumer. At the present time, poultry of mainland or foreign origin is sold with identifications that imply local origin. Also, frozen poultry from outside Hawaii is unfrozen and cut into pieces and offered for sale without notice that it was at one time frozen. These practices mislead the purchaser into believing that he is buying fresh poultry when in fact he is not." 1961 Sen. Journal 999.

In *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142, the United States Supreme Court said:

"* * * The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. See, *e.g., Huron Portland Cement Co.* v. *Detroit, supra* [362 U.S. 440]."

See also *Head* v. *New Mexico Board*, 374 U.S. 424.

The Poultry Products Inspection Act was passed to prevent interstate shipment of poultry and poultry products which are "unwholesome, adulterated or otherwise

unfit for human food." 21 U.S.C. 452. See S. Rep. No. 195, 85th Cong., 1st Sess.; H.R. Rep. No. 465, 85th Cong., 1st Sess.; Conf. Rep. No. 1170, 85th Cong., 1st Sess.

Act 109, on the other hand, is aimed at the protection of consumers of poultry in Hawaii.

> "* * * [S]tates have always possessed a legitimate interest 'in the protection of . . . [their] people against fraud and deception in the sale of food products' at retail markets within their borders. *Plumley* v. *Massachusetts,* 155 U.S. 461, 472. See also *Crossman* v. *Lurman,* 192 U.S. 189, 199-200; *Hygrade Provision Co.* v. *Sherman,* 266 U.S. 497; *Savage* v. *Jones,* 225 U.S. 501, 525-529.
>
> \* \* \* \* \* \* \* \*
>
> "* * * Congressional regulation of one end of the stream of commerce does not, *ipso facto,* oust all state regulation at the other end. Such a displacement may not be inferred automatically from the fact that Congress has regulated production and packing of commodities for interstate market. * * *" *Florida Lime & Avocado Growers, Inc.* v. *Paul, supra*[5] at 144-45.

The specific question of inspection by both the federal and state governments was raised during the Senate debates on the Poultry Products Inspection Act. It is clearly evident from the discussion on the scope of the act that there was no intent on the part of Congress to pre-empt the field.[6] In *Swift & Co., Inc.* v. *Wickham,*

---

[5] This case was remanded to the Federal District Court for a new trial limited to the effect of the California statute on interstate commerce.

[6] "MR. HOLLAND. * * * I may say there is no disposition on the part of the Florida Poultry Inspection Service to interfere with the setting up of the Federal service. On the contrary, as I have already stated, if the inspection takes place at the point of origin and the point of preparation of the poultry to enter into interstate commerce, their costs might very well be reduced. * * *

\* \* \* \* \* \* \* \* \*

"MR. HOLLAND. I may say that in our State * * * we do not pro-

USDC SNY (Three-judge court) U.S. Law Week, July 7, 1964, 33 L.W. 2001, the court considered the question as to whether the Secretary of Agriculture's regulation, pursuant to the Poultry Products Inspection Act, requiring frozen stuffed turkey labels to show only the net weight of stuffed turkey, bars New York's enforcement of its requirement that frozen stuffed turkeys bear labels showing both stuffed and unstuffed net weight. In holding that the general scheme of the Poultry Products Inspection Act does not suggest a congressional purpose to create an exclusive system of regulation of the marketing of poultry, and in particular, an intent to oust states of their historic undertaking to safeguard their people from improper statements of weight, the court concluded that a state requirement for a more detailed statement of weights was not ruled out by the regulation as to net weights under the federal statute.

---

pose to abandon our Florida pure-food inspection service, which has the right to inspect any food destined for human consumption, * * *.

"* * * We shall still have the right to inspect after the poultry comes to rest and is being offered to consumers. But we feel that in the last analysis the consumer will be much better protected and we will be much better protected, because no matter how carefully we inspect at the Florida end, we do not know the condition of the poultry at the time of its preparation in the evisceration plants.

"So we are strongly in favor of Federal legislation, without having any intention at all of abandoning either our own State inspection service or our own pure food inspection service; * * *. From our experience we believe that it is in the interest of his State, as well as in the interest of our own State, that the inspection be broadened, so as to assure us, at least, of the proper condition of the poultry at the time when it was prepared for shipment and at the time when it entered into interstate commerce.

   \*    \*    \*    \*    \*    \*    \*    \*    \*

"MR. TALMADGE. I should like to say to my distinguished friend, the Senator from Ohio [Mr. Lausche], that we have food and drug laws; and as soon as the inspected poultry leaves the official establishment, it comes under the jurisdiction of the pure food and drug laws. If any contaminated food goes into Ohio, Oregon, California, or Georgia, it then becomes subject to the Federal food and drug laws; and, in addition, if it comes to rest in the State of Ohio, it is also subject to the jurisdiction of the laws of the State of Ohio regarding the subject. So there is dual protection of the consumers; there is the protection afforded by the Ohio laws, and there is the protection afforded by the Federal food and drug laws." 103 Cong. Rec. 5237-5238.

We do not find anything in Act 109 which stands as an obstacle to the accomplishment and execution of the full purposes and objects of Congress.

Second, appellees contend that Act 109, S.L.H. 1961, is an unreasonable exercise of the police power. It is well settled that the State can use the police power to prevent fraud and deception, *Hygrade Provision Co.* v. *Sherman, supra; Savage* v. *Jones, supra; Crossman* v. *Lurman, supra; Florida Lime & Avocado Growers, Inc.* v. *Paul, supra,* or to promote the public health, safety, convenience and general welfare of the people. 11 Am. Jur., *Constitutional Law,* § 270, p. 1014.[7] *In re Bear,* 216 Cal. 536, 15

---

[7] In *Territory* v. *Ho,* 41 Haw. 565, this court declared as void Section 5 of Act 167, S.L.H. 1955 which made it unlawful to sell, offer or expose for sale any imported shell eggs of foreign origin unless there was displayed a placard bearing the words "WE SELL FOREIGN EGGS" printed in legible boldface letters of a size not less than three inches in height, when no such requirement was imposed upon chicken shell eggs of mainland or local origin. This court held that the requirement of Section 5, Act 167 contravened the provisions of the General Agreement on Tariffs and Trade since it did not come within any of the exceptions in Article XX of the agreement which provided:

"Subject to the requirement that such measures are not applied in a manner which would constitute a means of arbitrary or unjustifiable discrimination between countries where the same conditions prevail, or a disguised restriction on international trade, nothing in this Agreement shall be construed to prevent the adoption or enforcement by any contracting party of measures:

"I. (a) necessary to protect public morals;

   (b) necessary to protect human, animal or plant life or health;

   *   *   *   *   *   *   *

   (d) necessary to secure compliance with laws or regulations which are not inconsistent with the provisions of this Agreement, including * * * the prevention of deceptive practices."

It further stated:

"If it be deemed that a measure to prevent deceptive practices is necessary, such a measure, more comprehensive and nondiscriminatory, is found in section 1308 [now R.L.H. 1955, § 22-74] of the Revised Laws, which provides: 'In the case of eggs imported from the mainland United States or foreign countries, regardless of the person producing the same, each egg so imported shall be marked in clear

P.2d 489. *Parrott & Co.* v. *Benson,* 114 Wash. 117, 194 Pac. 986; *Hathaway* v. *McDonald,* 27 Wash. 659, 68 Pac. 376; *Hutchison Ice Cream Co.* v. *Iowa,* 242 U.S. 153. See *People* v. *Bishopp,* 106 App. Div. 266, 94 N.Y.S. 773; *State* v. *Sherod,* 80 Minn. 446, 83 N.W. 417; *Huron Portland Cement Co.* v. *Detroit,* 362 U.S. 440; *Williamson* v. *Lee Optical Co.,* 348 U.S. 483.

Act 109, S.L.H. 1961, was passed to protect the purchaser from being misled into "believing that he is buying fresh poultry when in fact he is not." By requiring a "sign, handbill, placard or otherwise," the purchaser would be informed as to whether the poultry was "MAINLAND or FOREIGN or LOCAL GROWN." The act was not aimed at interstate commerce, but without discrimination sought to promote fair representation in the sale of poultry to ultimate consumers in Hawaii. We conclude that Congress has not attempted to oust state regulations in the marketing of poultry, and that it is competent for this State, in the exercise of its police power, to require the disclosure of the geographic origin of poultry sold to ultimate consumers.

Based on the record before us, summary judgment should not have been granted either to Pacific Meat Co., Ltd. or C. Q. Yee Hop & Co., Ltd. However, the record is insufficient for us to make final disposition of the question whether Act 109 imposes a burden on interstate com-

---

and plain letters, of not less than twelve point type, the letters "U.S.", if such egg was produced in the mainland United States, or the name of the country, if such egg was produced in a foreign country, before such eggs may be removed from any dock or landing * * *.' The exception under Article XX of a measure relating to the prevention of deceptive practices is subject to the requirement that such a measure is not applied 'in a manner which would constitute a means of arbitrary or unjustifiable discrimination between countries where the same conditions prevail, or a disguised restriction on international trade. We think that the additional requirement of a placard of origin only in the case of foreign eggs constitutes a disguised restriction on international trade."

merce, the only point which is not fully disposed of by our opinion.[8]

Reversed and remanded for further proceedings consistent with this opinion.

*Bert T. Kobayashi,* Attorney General and *Alana W. Lau,* Deputy Attorney General for defendants-appellants.

*Robert G. Dodge (Heen, Kai & Dodge)* for plaintiffs-appellees.

---

[8] The attorney for Pacific Meat Co., Ltd. admitted during argument that he had not raised or briefed in this court the point that the act was an unreasonable burden on interstate commerce.

Where courts have considered the possible effect on interstate commerce in situations where labeling requirements have been pushed back to the wholesaler by the retailer, the effect on interstate commerce was concluded to be merely incidental to the main purpose of protecting the ultimate consumer from fraud and deception in the sale of the products. *Savage* v. *Jones,* 225 U.S. 501; *Standard Stock Food Co.* v. *Wright,* 225 U.S. 540; *State* v. *Buck Mercantile Co.,* 38 Wyo. 47, 264 Pac. 1023; *Swift & Co., Inc.* v. *Wickham, supra.*