No. 35,253

GERALD E. WITSCHNER, *Appellee,* v. THE CITY OF ATCHISON, and WILLARD C. LINVILLE, *Appellants.*

(117 P. 2d 570)

Opinion filed October 11, 1941.

*Jay S. Parker,* attorney general, *A. B. Mitchell, Guy E. Ward,* assistant attorneys general, *Maurice P. O'Keefe,* city attorney, and *Karl Root,* of Atchison, for the appellants.

*Steadman Ball* and *J. W. Lowry,* both of Atchison, for the appellee.

*Russ B. Anderson* and *Barton Carothers,* both of McPherson, as *amici curiae.*

The opinion of the court was delivered by

WEDELL, J.: This action purports to have been commenced pursuant to our declaratory judgment law (Laws 1921, ch. 168) to obtain an adjudication of the question whether a certain automatically operated pin ball marble amusement table constituted a gambling device under the laws of this state and the ordinances of the city of Atchison.

The action was instituted by the owner of the machine. Defendants are the city of Atchison and its chief of police. It was the judgment of the trial court the machine did not constitute a gambling device by reason of the fact it paid no money or property for any score the player might make, but accorded only free replays which were automatically tabulated by the machine. Defendants appeal.

It is defendants' contention that although the machine pays no money, tokens, checks or tickets, it does accord replays, ranging from two to fifty in number, depending upon the score made, and that such right to free plays "constitutes a valuable thing," and "property," as those terms are used in the gambling-device statutes of this state.

A serious preliminary question requires our attention before we reach the merits of the case. It is whether courts should permit an action of this character to be maintained under our declaratory judgment law. Would the use of that law for the instant purpose actually promote the purpose and intention of its framers? The pleadings and evidence will help emphasize the importance of the question involved.

Plaintiff is not operating any of his machines in the city of Atchison but merely pleads that he desires to install them in that city, and that they are not gambling devices. Defendants' answer denies generally every material averment contained in the petition except such averments as are thereafter admitted. In a subsequent paragraph it is asserted that the machines of which plaintiff is the owner and which he desires to place in the city of Atchison constitute a gambling device. It is clear, therefore, that the most favorable construction which can be placed upon the issues thus joined is that the parties disagree concerning the application of laws and ordinances to the machine which plaintiff desires to place in the city of Atchison, but which he is not now operating there. The petition also alleged: ". . . that any criminal actions that *might be instituted*

against plaintiff or anyone with whom he *might deal* in relation with said tables would, in addition to being costly, be embarrassing and humiliating to plaintiff and others." (Emphasis supplied.)

It will be observed that neither the petition nor the answer state that a criminal action will be instituted or even that such action is threatened in the event the machines are installed, or that the police officers will, or are threatening to, confiscate the machines if operated. What about the evidence? The evidence of plaintiff is entirely silent upon the subject of criminal prosecutions or confiscation. Plaintiff's evidence was to the effect that the scores were determined by the skill of the player. The record before us discloses no evidence whatsoever which was introduced or offered by the defendant city or its chief of police.

The trial court ruled the evidence disclosed an actual controversy existed, and that the machines did not constitute a gambling device. It may also be noted that plaintiff's evidence discloses similar machines are now being operated in numerous Kansas towns. It is thus clear the question presented might readily be determined in an actual trial, and that there is no need for invoking the declaratory judgment law. While the last fact might not be a sufficient ground in every situation upon which to deny the use of the declaratory judgment law, we think it constitutes one of the circumstances in the instant case which may well be considered in determining whether courts should entertain this sort of action under the declaratory judgment law.

Upon careful deliberation we have concluded that irrespective of whether an actual controversy exists, and assuming courts have jurisdiction under the declaratory judgment law to determine the question involved, they should not exercise it in an action of this character. It is a far safer practice to permit an action of this character to be tried on its merits rather than for courts to undertake to make a binding adjudication in advance touching machines of this character and their operation. This is especially true in a case containing the meager record presented here. True, the purpose of the declaratory judgment law was to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights and to make the courts more serviceable to the people. But would a declaratory judgment, in favor of plaintiff, on a record such as the instant one, actually effect that purpose or might it not in fact tend to make law enforcement less effective? Would not the

tendency be for police officers to disregard the particular operation and use of the machines in their localities on the theory their operation had been declared legal? If so, the declaratory judgment law could easily become of less rather than of greater service to the people. Might not a judgment, in favor of plaintiff, tend to produce confusion rather than clarity? The instant case presents a rather clear example of the confusion which might result depending upon the evidence in subsequent cases, assuming later actions were instituted in the event a judgment was now rendered in favor of plaintiff. In this case, as heretofore stated, no evidence of the defendant city or its chief of police appears in the record before us. Plaintiff's evidence disclosed the number of replays to which the operator of the machine might become entitled was determined by the skill of the player. Supposing in an actual criminal prosecution, or in a confiscation case elsewhere involving the same kind of machines, the police officers did testify, and in fact testified positively, that the results were not determined by the skill of the player at all, but that, on the contrary, the result was purely a matter of chance. Supposing we should in such an actual prosecution hold the machine constituted a gambling device, should we then permit the machine to continue to operate in Atchison and deny the right to operate the same machines elsewhere? Would such a result make the declaratory judgment law more serviceable to the people in the enforcement of the antigambling statutes? We do not think so.

What about the confusion in decisions which would result by reason of the variance in the burden of proof in actions of this character? In a civil action the burden of proof required is a preponderance of the evidence. In a criminal action the proof required is that which convinces the mind beyond a reasonable doubt. Would a declaratory judgment in favor of plaintiff in the instant case constitute a valid defense to a criminal prosecution for a subsequent operation of the same machine? Obviously not. The record in that action might justify a conviction. Would a judgment in favor of the plaintiff, on the meager testimony in the instant record, constitute a defense to an equitable action to enjoin the use of the machine on the theory it constituted a nuisance? These and other confusing complications readily suggest themselves in connection with the wisdom of courts exercising jurisdiction in every kind of a case in which an adjudication might be sought pursuant to the declaratory judgment law. It would appear the courts can be of

greater service to the people if litigants in cases of this character are required to pursue the regular and established procedure, which is far better adapted to the trial and adjudication of issues of fact as well as law.

Another matter suggests itself which seems to us is worthy of notice. Plaintiff does not expressly pray for equitable relief in the form of injunction, but the effect of a judgment in his favor would tend to be the same. The judgment would tend to act as a restraint against criminal prosecution. Equity cannot ordinarily be invoked to enjoin the prosecution of crime. Why should that relief in effect be accorded pursuant to the declaratory judgment law? Was that the purpose and intent of the law? We do not think so. It has been held, in some cases similar to the instant one, that courts do not have such equity jurisdiction or power under the declaratory judgment law. (*International Mutoscope Reel Co. et al. v. Lewis J. Valentine, etc.*, 271 N. Y. 622; *Times Amusement Corporation v. Moss*, 290 N. Y. S. 794; *Reed v. Littleton*, 275 N. Y. 150; *Worden v. City of Louisville*, 279 Ky. 712; *Earhart v. Young*, 174 Tenn. 198.) The logic of these last decisions, and other similar ones, is criticized somewhat in Borchard's Declaratory Judgments (1941), 2d ed., pp. 1030, 1031. While there may be some occasion in reason for the authorities to differ as to the theory upon which relief under the declaratory judgment law is granted or denied, we are persuaded that this law is not well suited to adjudicate the question presented, and that to permit it to be so employed may well endanger, rather than preserve, the good it was designed to accomplish. We therefore conclude the district court should not have entertained the action. The judgment of the district court is reversed with directions to vacate its judgment and dismiss the action.

WEDELL, J. (concurring): I concur in the view that the judgment of the trial court should not be permitted to stand, but prefer to base my decision upon the ground the trial court erred in finding an actual controversy existed.

When the case was argued orally I took occasion to inquire of counsel whether the record in the instant case disclosed an actual controversy existed. That subject was not briefed on either side and had not been mentioned in oral argument. The parties were given additional time to brief that particular subject. Plaintiff had filed his brief and we are now also favored with a brief *amici curiae* upon

that subject. Defendants have not briefed the subject and advance no contention either way touching that point. In my mind, the fact defendants make no contention touching that subject is significant if it is not in reality a confession that no *actual* controversy exists insofar as they are concerned. It would almost appear they are willing to have a judgment rendered in favor of the plaintiff. This view is strengthened by the fact that no evidence introduced or offered by defendants appears in the record before us. I was about to say defendants introduced no evidence, but the journal entry of judgment discloses they did. If they did, they have not abstracted that evidence for our assistance.

In any event, the principal sections of chapter 168, Laws of 1921, our declaratory judgment law, are G. S. 1935, 60-3127 and 60-3132. They provide:

*"In cases of actual controversy,* courts of record within the scope of their respective jurisdictions shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceedings shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right. (L. 1921, ch. 168, § 1; Feb. 23; R. S. 1923, § 60-3127.)" (Emphasis supplied.) (G. S. 1935, 60-3127.)

"This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered, with a view to making the courts more serviceable to the people. (L. 1921, ch. 168, § 6; Feb. 23; R. S. 1923, § 60-3132.)" (G. S. 1935, 60-3132.)

Interpreting these provisions, this court has definitely held the declaratory judgment law is available only "in cases of actual controversy." (See G. S. 1935, 60-3127, 60-3132; *West v. City of Wichita,* 118 Kan. 265, 267, 234 Pac. 978; *Williams v. Flood,* 124 Kan. 728, 262 Pac. 563; *Purity Oats Co. v. State,* 125 Kan. 558, 559, 264 Pac. 740; *City of Cherryvale v. Wilson,* 153 Kan. 505-509, 112 P. 2d 111.)

Plaintiff contends an actual controversy, that is, an actual invasion of right, is not a prerequisite to his right to invoke the declaratory judgment law of this state, and cites *State, ex rel., v. Grove,* 109 Kan. 619, 201 Pac. 82; 19 A. L. R. 1116; *State, ex rel., v. Kansas*

*City,* 110 Kan. 603, 204 Pac. 690; *Little v. Smith,* 124 Kan. 237, 257 Pac. 959, 57 A. L. R. 100; *City of Independence v. Hindenach,* 144 Kan. 414, 61 P. 2d 124. He also relies upon decisions from other states.

I frankly concede that, in my opinion, the decisions of this court are not altogether consistent, and will not endeavor to harmonize them in every particular. Our statute, G. S. 1935, 60-3127, expressly limits the declaratory judgment law to cases of actual controversy. The real conflict and confusion in our decisions, in the view of the writer, does not lie in the requirement of an actual controversy, but rather in what constitutes an actual controversy, and in the fact that this court has rendered some judgments under this law when no actual controversy existed. It is, however, well to note that in some of the cases relied upon by plaintiff this court pointed out that it was conceded an actual controversy existed, and that no jurisdictional or procedural question was raised. (*Little v. Smith,* supra, p. 238.) It is also well to observe that in the Smith and Grove cases, cited by plaintiff, the principal questions presented were not the interpretation of a statute, but whether the particular statutory enactments involved were constitutional or valid. In the Hindenach case, *supra,* also cited by plaintiff, it clearly appears a real, or actual, controversy existed and it expressly was so stated in the opinion (p. 421). It also appears the lawmakers as late as the last legislative session (1941) interpreted our declaratory judgment law as requiring an actual controversy. In that session they passed chapter 289, Laws of 1941, an act relating to declaratory judgments. They there provided for declaratory judgments touching express trusts, and as to that particular subject the lawmakers omitted the words "in cases of actual controversy" contained in G. S. 1935, 60-3127, which last section was left unchanged. It is thus logical to assume the lawmakers intended to retain the prerequisite of an actual controversy in all other instances in which the declaratory judgment law properly might be invoked.

Our declaratory judgment law was not designed for the adjudication of legal questions or issues touching controversies which may never arise. (*West v. City of Wichita,* 118 Kan. 265, 267, 234 Pac. 978.) The declaratory judgment law is useful and has proven its value, but its usefulness will end if it is employed as a panacea for all ills, real or imaginary. (*Reed v. Littleton,* 275 N. Y. 150, 157.) The record in the instant case fails to affirmatively disclose that an actual controversy exists.

The district court had jurisdiction to hear and determine the issue presented. That jurisdiction includes the power to reach a wrong as well as a right decision. In my view that court erred in finding an actual controversy existed. I therefore prefer to reverse the judgment on that ground.

DAWSON, C. J. (concurring): I concur in the result, but prefer to state my own views in brief. There was no justiciable controversy between plaintiff and the city of Atchison under the declaratory judgment act or any other act. The position of the plaintiff simply was that he intended to create a situation in that city by bringing into it some contraptions which might eventually give rise to a controversy as to whether they were gambling devices. This was very far from any sort of case the declaratory judgment act was designed to cover. Whether our prior decisions pertaining to this act make a consistent fabric of adjudications is irrelevant. No precedent for the sort of case here presented can be found in any of them. It was an error for the district court to entertain the action, and on grounds of public policy it should have dismissed it—on its own motion if not otherwise. How can that error be corrected? By appeal to this court, of course. I therefore concur in the judgment and order of this court reversing the district court's judgment and directing it to dismiss the action at the cost of the plaintiff.