EASTERN BOOKS, F&N Enterprises, Inc. tdba the Adult Book Store, Kenneth R. Buranich tdba Cine 70, Donald N. Fetzner, Louis P. Locanto, Robert W. Zeny and Glen W. Zeny

v.

Mario S. BAGNONI, Individually and in his official capacity as a City Council Member, et al.

Civ. A. No. 77–127 Erie.

United States District Court, W. D. Pennsylvania.

March 3, 1978.

W. Gustave McGeorge, Zanita Zacks-Gabriel, Erie, Pa., for plaintiffs.

Donald Rogala, Deputy City Sol., Ellen Doyle, Erie, Pa., for defendant.

## OPINION

KNOX, District Judge.

Plaintiffs bring this action against various members of the City Council of the City of Erie, Pennsylvania, a City of the Third Class, complaining of the passage of a certain ordinance No. 59–1977, passed by the City Council on August 24, 1977, approved by the Mayor August 26, 1977, and effective 20 days thereafter on September 14, 1977.

Plaintiffs seek to have the court enter a declaratory judgment declaring that the ordinance is unconstitutional and cannot be enforced against the plaintiff and to issue a temporary restraining order and preliminary and permanent injunctions against the enforcement of the ordinance against the plaintiffs. The American Civil Liberties Union was granted leave to file brief as amicus curiae.

The suit is brought under the Civil Rights Act, 42 U.S.C. § 1983[1] and 42 U.S.C. § 1985(3)[2] and also under various amendments to the U.S. Constitution.

At the time the suit was filed, the matter was taken before Chief Judge Weber of this court who by order dated September 14, 1977, denied plaintiffs' motion for

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] "(3) if two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

temporary restraining order but directed the filing and service of the complaint. Chief Judge Weber refused the temporary restraining order because the Ordinance by its very terms did not create a penal offense which authorized summary police action and only provided for civil abatement of a public nuisance after notice, hearing, a finding of fact by the City Council and order to cease and desist and then procedure by civil enforcement in an equitable action in the Court of Common Pleas. The suit then proceeded and a motion to dismiss was filed by the defendants claiming the complaint is prolix, that the complaint fails to state a claim upon which relief can be granted and the court had no jurisdiction of the matter under paragraph 35 which was styled "pendent jurisdiction claim". After the motion was filed, briefs were received from the parties and the amicus curiae and argument was held. Thereafter the court called for additional briefs relative to the impact upon the Ordinance of the passage of Act No. 68 of 1977 by the Pennsylvania Legislature which became effective January 4, 1978, while determination of the motion to dismiss was held under advisement by the court. Additional briefs on this question have been received and the court determines that insofar as the Civil Rights Act and the Federal Constitution are concerned, the Ordinance in question is Constitutional. The court therefore finds it unnecessary to consider the question of the Constitutionality of Act 68 or its impact upon the City of Erie Ordinance in question. The question which will have to be solved by the Pennsylvania Courts is whether Act 68 preempts the field covered by the City of Erie Ordinance 59–1977. The court finds it is appropriate under the circumstances to abstain on this matter which is purely a question of supremacy of Pennsylvania law to be determined by the Pennsylvania Courts. If it is determined that the field has been preempted by Act 68, then it is for the Pennsylvania Courts to determine whether and to what extent the Ordinance is now invalid or whether it is merely supplemental to the Pennsylvania Act. See *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951) for the tests to be applied in determining these questions.

It is noted that at the present time there are no state proceedings pending in state courts relative to the validity or enforcement of this Ordinance and therefore there is no need for this court to abstain with reference to matters of Federal Constitutional Law under the holding of the U.S. Supreme Court in *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

We find that a case and controversy in view of the past harassment and apparent attempts to terminate plaintiffs' businesses is pending under Article III of the Federal Constitution although at the present time nothing has been threatened and no other prosecution or other action has yet been taken. We hold that in view of the history of the past harassment by the City of Erie and its officials the seeds of a ripening controversy are pending and that this would be a proper case for declaratory and injunctive relief if a cause of action is otherwise made out. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

With respect to the matter of pendent jurisdiction, this claim was withdrawn at the time of argument and in any event since the court holds that as far as the Federal Constitution is concerned this Ordinance is Constitutional and there is at present no federal cause of action we would not in the exercise of our discretion proceed to consider the pendent cause of action under Pennsylvania State Law.

The Ordinance in question, copy of which is attached to the complaint as Exhibit E–1, is entitled:

"Amending Part Seven (General Offenses) of the Codified Ordinance of the City of Erie, Pennsylvania by adding a new Article declaring the commercial exploitation of lewd motion picture films, and publications, and the use of massage parlors and model studios for the purposes of lewdness, assignation, or prostitution, to be contrary to public health,

safety and general welfare; making any place possessing or exhibiting such lewd motion picture films, and any place of business in which lewd publications constitute the part of the stock in trade, and any massage parlor or model studio used for the purpose of lewdness, assignation, or prostitution, a public nuisance; making all lewd matter possessed in such places in a public nuisance per se; ordering abatement after declaration and providing for notice and civil proceedings to abate the same and for other relief by resolution."

Then follows a statement of the purpose of the ordinance and findings made by the City Council in Section 1.

"The Council of the City of Erie find that the crass commercial exploitation of explicit sexual conduct through the public exhibition of lewd films, and the display and/or sale of lewd publications, and the use of so-called massage parlors and model studios for purposes of lewdness, assignation, or prostitution, constitutes a debasement and distortion of a sensitive key relationship of human existence, central to family life, community welfare and the development of human personality, is indecent and offensive to the senses and to public morals and interferes with the comfortable enjoyment, of life and property, in that such interferes with the interest of the public in the quality of life and total community environment, the tone of commerce in the City of Erie, property values, and the public safety; and that the continued operation of such activities is detrimental to the best health, safety, convenience, good morals and general welfare of the City of Erie, and of the residents, citizens, inhabitants and businesses thereof. The City Council hereby declares such activities to be a public nuisance, and herein establishes procedures for the abatement thereof. This ordinance shall apply to existing establishments which are presently engaged in the type of activity herein declared to be a public nuisance."

In Section 2 we find a series of definitions defining such things as the word "lewd", "massage parlor", "model studio", "nude", and so forth which definitions in and of themselves are as obscene as anything which could be found in a book or a magazine prescribed by the Ordinance.

Section 3 declares that places where lewd films are exhibited are public nuisances and in Section 4, places of business where lewd publications constitute a principal part of the stock and trade are likewise proscribed as nuisances and Section 5 also declares as public nuisances massage parlors or model studios used for purposes of lewdness, assignations or prostitution. Section 6 provides that upon a finding by City Council that a public nuisance exists with respect to one of these establishments, the Council shall set forth the evidentiary facts considered in arriving at such definition and ordering the public nuisance to be abated within 24 hours and ordering the City Solicitor to proceed under Section 9 of the Ordinance to abate the public nuisance *through judicial proceedings* "including requesting the court to advance such proceedings on the calendar of the court". Subsection (f) and (g) provide for notices to the persons involved. Section 8 provides for forfeitures "upon judgment for the City of Erie in legal proceedings brought pursuant to this Ordinance" of various items of property and monies received by the defendant or defendants and providing for the expenses to be a lien upon the property in a "separate legal proceeding". Section 9 provides for action to be taken by the City Solicitor after a finding by resolution of the City Council that a public nuisance exists. The City Solicitor is directed to commence legal proceedings seeking declaratory judgment that the matters are public nuisances and accounting for monies received after notice previously given by the City Council and asking for an injunction restraining the defendants from possessing or publicly exhibiting "said lewd motion picture films" or "said lewd publications" or from committing acts of lewdness, assignation or prostitution in the future in the City of Erie, providing for forfeiture of the films and publications and to seek judgment for costs

expended and then seek other relief as the court may deem proper.

It will be noted that the City of Erie is a City of the Third Class of Pennsylvania operating under a Home Rule Charter adopted pursuant to the optional Third Class City Charter Law of July 15, 1957 P.L. 901, 53 Purdon's Statutes 41,101. See also 53 Purdon's Statutes 41,301. Under 2403 of the Third Class City Code of Pennsylvania (53 PS 37,403(16)) a Third Class City is given the power to prohibit nuisances and the carrying on of any offensive manufacture or business. This is not one of the prohibited fields for municipal regulation under 53 PS 1–302(a) and (b). These matters however are more properly for decision by the state courts rather than the federal tribunals.

Complaint has been made by the plaintiffs that this Ordinance does not adequately define a nuisance under Pennsylvania Law. That is a problem for the Pennsylvania courts. *Commonwealth v. MacDonald,* 464 Pa. 435, 347 A.2d 290 (1975). It will be noted that the Ordinance does not prohibit all uses of the property but only uses for purposes of lewdness and other matters prohibited by the Ordinance. Cf. *Commonwealth ex rel. Davis v. Van Emberg,* 464 Pa. 618, 347 A.2d 712 (1975).

The plaintiffs further complain that in judicial proceedings the courts may take the view that they are only to consider an abuse of discretion by an administrative body on judicial review and not get to the merits. See *Flaherty v. Port Authority,* 450 Pa. 509, 299 A.2d 613 (1973). Flaherty was a suit by the Mayor of Pittsburgh to prevent the Port Authority from going ahead with certain plans. An entirely different matter is presented here where the City Council has merely directed the City Solicitor to bring an action before the court under certain circumstances. The Mayor or the City Solicitor himself might have investigated to determine if suit should be brought. But this does not make such consideration a violation of the U.S. Constitution. We cannot believe that the Court of Common Pleas and the other Pennsylvania courts reviewing the matter would be so insensitive to First Amendment problems arising in such a case as not to make its own independent determinations as to whether tests of obscenity under the First Amendment to the Federal Constitution have been met. If that should occur, then this court would probably reconsider the matter of the validity of this Ordinance.

We find that this Ordinance is prima facie Constitutional under the decision of the U.S. Supreme Court in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) wherein it was clearly held that nothing precludes the states from regulating the exhibition of obscene motion pictures in adult theatres to consenting adults provided that the tests of *Miller v. California,* 413 U.S. 2325, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) are met, i. e., (1) whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest, (2) whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable state law as written or construed and (3) whether the work taken as a whole lacks serious literary, artistic, politic or scientific values. The court further held in *Paris Adult Theatre* that the states have an interest in protecting the social interests in law, order and morality and are free to do so provided the tests of *Miller* are met.

Inasmuch as the findings by the City Council do not of themselves result in the infliction of any penalties civil or criminal upon anyone but such penalties can only be imposed after proper judicial proceedings which the court assumes would be after proper notice and hearing by the Court of Common Pleas, we cannot say that this Ordinance runs afoul of the Federal Constitution in any respect. None of the parties have considered or briefed the case of *Southeastern Promotions Limited v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) where an application to a City Board to present the musical show "Hair" in a municipal theatre had been rejected.

It was held that this was a prior restraint on expression in violation of the First Amendment lacking Constitutionally required safeguards. The court said at page 553, 95 S.Ct. at page 1244:

"Invariably, the court has felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law."

"In each of the cited cases the prior restraint was embedded in the licensing system itself, operating without acceptable standards. In Shuttlesworth the court held unconstitutional a Birmingham ordinance which conferred upon the city commission virtually absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on streets or public ways. It ruled that 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional'."

The court further held at page 558 and 559, 95 S.Ct. at page 1246 as follows:

"Any system of prior restraint, however, 'comes to this court bearing a heavy presumption against its constitutional validity'. [Citations] The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable. See *Speis-*

*er v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)."

What will meet the tests of the Supreme Court in this area is set forth on page 560, 95 S.Ct. on page 1247 as follows:

"We held in *Freedman,* and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured."

In the instant case the tests of *Southeastern Promotions Ltd. and Freedman v. Md.,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) are clearly met because the burden of instituting judicial proceedings and proving that the material is unprotected rests upon the City of Erie, there is no provision for restraint prior to judicial review and prompt final judicial determination is assured.

Under these circumstances, we hold that ample safeguards have been adopted by the City Council of Erie for protecting the rights of these plaintiffs in a judicial determination before the Court of Common Pleas as to whether the materials exhibited by them or acts proscribed constitute obscenity under the decisions of the U.S. Supreme Court. Under these circumstances we hold that the complaint has failed to set forth a claim upon which relief can be granted and we will therefore dismiss the complaint.