124 P.3d 975

**Daniel Lealoha KAHAIKUPUNA and Frederick Ponce, Plaintiffs–Appellants**

v.

**STATE of Hawai'i, County of Maui, Defendants–Appellees**

and

**John Does 1–10 and Doe Entities 1–10, Defendants.**

No. 26850.

Supreme Court of Hawai'i.

Dec. 19, 2005.

As Corrected Jan. 5, 2006.

James Richard McCarty, on the briefs, for plaintiffs-appellants.

Dorothy Sellers and Kimberly Tsumoto, Deputy Attorneys General, State of Hawaii, on the briefs, for defendant-appellee State of Hawaii.

Jane E. Lovell, Deputy Corporation Counsel, County of Maui, on the briefs, for defendant-appellee County of Maui.

MOON, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ.; with LEVINSON, J., Concurring Separately and Dissenting.

Opinion of the Court by ACOBA, J.

Plaintiffs–Appellants Daniel Lealoha Kahaikupuna and Frederick Ponce [collectively, Plaintiffs] appeal from the September 22, 2004 judgment of the circuit court of the second circuit[1] (the court) in favor of Defendants–Appellees the State of Hawai'i (the State), and the County of Maui (the County) [collectively, Defendants]. Plaintiffs also challenge the court's August 31, 2004 findings of fact (findings), conclusions of law (conclusions) and order granting Defendants' motion to dismiss the complaint. Because we hold that Plaintiffs' challenges to Hawai'i Revised Statutes (HRS) § 711–1109(1) (Supp.2004) and Chapter 9.08.010 of the Maui County Code (MCC)[2] are not proper subjects for a declaratory judgment, we vacate the September 22, 2004 judgment and the aforesaid findings, conclusions, and order and remand the case to the court to enter summary judgment in favor of the County on its motion and in favor of the State on its joinder to the County's motion and to enter judgment thereon on the grounds set forth herein.

I.

On May 28, 2004, Plaintiffs filed a complaint under the provisions of HRS § 632–1 (1993),[3] asking the court to enter a declaratory judgment to the effect that cockfighting is a native Hawaiian customary right protected pursuant to article XII, section 7 of the State Constitution[4] and HRS § 7–1 (1993).[5] Plaintiffs named the State and the County as parties in the suit. Cockfighting is prohibited under State[6] and County[7] laws. Plain-

---

1. The Honorable Joel E. August presided.

2. The texts of these provisions are produced *infra*.

3. Hawai'i Revised Statutes (HRS) § 632–1 is reproduced *infra*.

4. Article XII, section 7 of the Hawai'i Constitution states that:

   The State reaffirms and shall protect all rights customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

5. HRS § 7–1 states that:

   Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall have a right to drinking water, running water, and the right of way. The springs of water, running water, and roads shall be free to all, on all lands granted fee simple; provided that this shall not be applicable to wells and watercourses, which individuals have made for their own use.

6. HRS § 711–1109 (1993 & Supp.2004) of the Hawai'i Penal Code provides in relevant part as follows:

   **Cruelty to animals.** (1) A person commits the offense of cruelty to animals if the person intentionally, knowingly, or recklessly:

   (a) Overdrives, overloads, tortures, torments, cruelly beats or starves any animal, or causes or procures the overdriving, overloading, torture, torment, cruel beating or starving of any animal, or deprives a pet animal of necessary sustenance or causes such deprivation;

   (b) Mutilates, poisons, or kills without need any animal other than insects, vermin, or other pests;

   (c) Keeps, uses, or in any way is connected with or interested in the management of, or receives money for the admission of any person to, any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock, or other animal, and every person who encourages, aids, or assists therein, or who permits or suffers any place to be so kept or used;

   . . . .

   (e) *Assists another in the commission of any act of cruelty to any animal.*

   . . . .

   (4) Cruelty to animals is a misdemeanor. (Emphasis added.)

7. Chapter 9.08.010 of the Maui County Code (MCC) provides that

   *[a]ny person within the county who shall promote, conduct or maintain a cockfight, or who shall assist in promoting, conducting or maintaining a cockfight, or any person who is present at any cockfight,* shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed five hundred dollars and costs, or be imprisoned until such fine and costs have been discharged by operation of law. (Emphasis added.)

tiffs have not been charged with a criminal offense.

In the complaint, Plaintiffs represented that they are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778. They further asserted that cockfighting is a "traditional native Hawaiian cultural practice." Plaintiffs requested "entry of a[j]udgment declaring, determining, and resolving Plaintiffs' legal status, rights and privileges" and "entry of judgment declaring that Plaintiffs have the right to practice raising and fighting roosters as part of their culture."

On July 16, 2004, the County filed a motion to dismiss Plaintiffs' complaint for lack of jurisdiction. The County argued that Plaintiffs failed to "allege an 'actual controversy'" because Plaintiffs failed to plead that they have either been charged with or convicted of violations pursuant to State or County laws, and, therefore, the court was "depriv[ed]" of subject matter jurisdiction. The County also argued that "[e]ven if the [c]ourt had jurisdiction, Plaintiffs' [c]omplaint fails to state a claim upon which relief may be granted."

On July 22, 2004, the State filed a substantive joinder in the County's Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6) motion to dismiss (joinder). The State asked the court to treat the County's motion to dismiss as one for summary judgment pursuant to HRCP Rules 12(c) and 56 (2004)[8] because the County's motion to dismiss included matters outside of the pleadings.

On August 19, 2004, Plaintiffs filed a memorandum in opposition to both the County's motion to dismiss and the State's joinder, arguing that (1) by virtue of HRS § 632–1, *infra*, the court has jurisdiction to grant declaratory relief for (a) "[c]ontroversies in-

volving the interpretation of ... statutes, municipal ordinances, and other governmental regulations ...," (b) when "antagonistic claims are present between the parties which indicate imminent and inevitable litigation," or (c) "where the court is satisfied that a party asserts a legal[ ] relation, status, right, or privilege ... and that there is a challenge ... by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding[,]" (2) Plaintiffs' action is ripe, (3) Plaintiffs have standing, and (4) the complaint does state a claim. In a declaration, Plaintiff Kahaikupuna stated that although he has never been charged with or convicted of a crime, he faces the "real, immediate and adverse threat of criminal prosecution ... for practicing the traditional Hawaiian custom of cockfighting[,]" and that the threat is a "serious threat which impacts my life as well as the lives of the members of my family."

On August 31, 2004, the court issued its findings, conclusions, and order granting Defendants' motion to dismiss. The court determined that as a matter of law (1) it had jurisdiction over the subject matter of the action and Plaintiffs had standing, (2) the claims were ripe in that competing interests were likely to lead to litigation if Plaintiffs should attempt to exercise their claimed rights, (3) the motion to dismiss should be decided under the provisions of Rule 56 of the HRCP, rather than under Rule 12 because there were matters presented to the court that were outside the pleadings, and (4) summary judgment should be granted against Plaintiffs on the merits.[9]

---

**8.** HRCP Rule 56 states in relevant part as follows:

> (b) **For defending party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof....

**9.** In an erudite review of the case, the court ruled:

> 7. Even if one assumes that cockfighting was a cultural practice under the Kingdom of

Hawai'i, the state has chosen to legislatively regulate and ban such activity. In constitutional challenges to legislation in Hawai'i, "(1) legislative enactments are presumptively constitutional; (2) a party challenging [a statutory scheme] has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest[,] and unmistakable." *Pray v. Judicial Selection Comm'n*, 75 [Haw.] 333, 340, 75 Haw. 333, 861 P.2d 723, 727 (1993) (internal quotations omitted); *Sifagaloa v. Bd. of Trs. of the Employees' Ret. Sys.*, 74 [Haw.] 181, 191, 74

Plaintiffs filed a notice of appeal on September 27, 2004.

## II.

On appeal, Plaintiffs contend that the court erred in ruling that (1) raising and fighting roosters was not a customary traditional practice of Native Hawaiians, despite substantial and uncontested evidence in the record to the contrary, or at least there was a genuine issue of fact as to the existence of such a practice, (2) pursuant to chapter 24 of the Kingdom of Hawai'i Penal Code enacted in 1884, raising and fighting roosters was not a right customarily and traditionally exercised for subsistence or cultural purposes by native Hawaiians, and (3) such a right is not protected by article XII, section 7 of the Hawai'i Constitution. Plaintiffs state that they make "no contention that any of the existing state laws regarding cockfighting were unconstitutional" and they "do not ask for declaration that any state or county laws were unconstitutional."

In response, the State argues that (1) summary judgment was proper because cockfighting is not a constitutionally or statutorily protected Native Hawaiian customary right, (2) summary judgment was correct because Plaintiffs have not set forth specific facts to show that there are any genuine issues of material fact, (3) the court properly ruled that the State exercised its constitutional right to regulate Native Hawaiian customary practices, and (4) declaratory judgment is improper because the issue of whether cockfighting is a Native Hawaiian customary right is not ripe for review.

The County agrees with the State's first and second arguments and also contends that (1) chapter 24 of the Hawaiian Kingdom's penal code outlawed more than merely keeping or managing a place used for cockfighting, (2) neither the County nor the State prohibits the raising of roosters, (3) there are no disputed material facts, and (4) Plaintiffs have failed to overcome the presumption that the County's anti-cockfighting ordinances are valid.

In requesting a declaratory judgment as to whether cockfighting is a protected native Hawaiian right, Plaintiffs urge this court to "determine their rights prior to having to suffer actual criminal prosecution, which is threatened and imminent." Because we believe Plaintiffs' request is not appropriate for a declaratory judgment action, we affirm summary judgment on behalf of the State and County, but on different grounds. *See*

Haw. 181, 840 P.2d 367, 371 (1992) (quoting *Blair v. Cayetano*, 73 [Haw.] 536, 542, 73 Haw. 536, 836 P.2d 1066, 1069 (1992)).

8. Although cockfighting may have been popular with certain native residents during the monarchy, the [c]ourt takes judicial notice that under the laws of the Kingdom of Hawai'i such activity was considered "cruelty to animals" and was illegal. The [c]ourt concludes that this illegal activity under the laws of the Kingdom of Hawai'i does not translate into an established custom that was culturally accepted and generally practiced as of 1892, or was a recognized right of the Kingdom's subjects.

9. Because Plaintiffs do not argue that cockfighting customarily and traditionally served a religious purpose among native Hawaiians, the only remaining argument for constitutional protection is that cockfighting is a customary and traditional right encompassed in Section 7–1 of the [HRS]. Section 7–1 protects customary and traditional native Hawaiian practices that relate to subsistence. Subsistence rights have traditionally concerned water, access, and gathering rights. The [c]ourt concludes that cockfighting, legally regarded as cruelty to animals, has absolutely no connection with subsistence rights.

10. Plaintiffs claim that raising roosters is a practice that is part of their native Hawaiian culture, but this claim does not raise an issue in controversy. *No law prevents Plaintiffs from raising roosters, and Plaintiffs have not alleged that the County of Maui, or the State of Hawai'i, has prevented Plaintiffs from raising roosters.*

11. Plaintiffs [sic] claim presents no genuine issues to any material fact. Because the [c]ourt concludes that cockfighting was illegal under the laws of the Kingdom of Hawai'i, and such activity is not a constitutionally or statutorily protected right customarily and traditionally exercised for subsistence or cultural purposes by native Hawaiians, Defendants are entitled to judgment as a matter of law.

12. In the absence of any genuine issues of material fact, the [c]ourt also concludes that Plaintiffs have failed to overcome the presumption that state and county laws that prohibit cockfighting are constitutional, or that the constitutional defect in such laws is clear, manifest, and unmistakable.

(Emphasis added.)

*Waianae Model Neighborhood Area Ass'n v. City & County of Honolulu,* 55 Haw. 40, 43, 514 P.2d 861, 864 (1973); *McCarthy v. Yempuku,* 5 Haw.App. 45, 52, 678 P.2d 11, 16 (1984) (holding that an appellate court may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it).

### III.

It is evident, as mentioned above in Plaintiffs' complaint, that they sought a declaratory judgment because of a perceived threat of criminal prosecution. The complaint was filed under the provisions of the Declaratory Judgments Act, HRS § 632–1, which states:

In cases of *actual controversy,* courts of record, within the scope of their respective jurisdictions, shall have power to make binding adjudications of right, whether or not consequential relief is, or at the time could be, claimed, and no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of right is prayed for; provided that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

(Emphasis added.)

■ Plaintiffs argue that HRS § 632–1 provides them with the right to seek declaratory judgment where "[c]ontroversies involving the interpretation of ... statutes, municipal ordinances, and other government regulations, may be so determined." Plaintiffs also rely on *Pires v. Phillips,* 31 Haw. 720, 721 (Terr.1930), in which this court ruled that it was proper to grant declaratory relief concerning the meaning of lease terms when the dispute between the parties concerning their respective rights depended on the interpretation of the lease itself.

On the other hand, the State and County contend that under *Pacific Meat Co. v. Otagaki,* 47 Haw. 652, 655, 394 P.2d 618, 620 (1964), a declaratory judgment is not ordinarily available to challenge the validity of a criminal statute, and that the circumstances in this case do not warrant equitable relief particularly because there are other adequate remedies of law, such as defending a criminal prosecution. The State asserts that the criminal court would be in a better position to resolve all of the constitutional and legal questions that may arise concerning Hawaiian ancestry, cockfighting as a traditional native Hawaiian practice, and other questions relating to an actual criminal charge.

The State also relies on *League of Women Voters of Hawaii v. Doi,* 57 Haw. 213, 552 P.2d 1392 (1976). In that case the plaintiff sought a declaratory judgment on whether defendant elections officer was required by

the Hawai'i State Constitution to place the question of whether there should be a constitutional convention on the 1976 general election ballot. The issue became moot when the legislature submitted the question to the electorate to be voted on at the 1976 general election. The circuit court dismissed the case on summary judgment. On appeal, the plaintiff agreed that the issue was moot but contended that the interpretation of the constitutional provision as to future years remained unresolved. This court dismissed the appeal, declining to "decide important questions regarding the scope and constitutionality of a particular case in advance of its immediate adverse effect in the context of a particular case." *Id.* at 214, 552 P.2d at 1393 (citations, brackets and quotation marks omitted).

## IV.

In the instant case, the court determined in conclusion no. 3 that "[HRS] chapter 632 ... allows for judicial resolution by means of declaratory judgment." Further, the court in conclusion no. 4 noted that "declaratory judgment will serve to terminate any uncertainty relative to the claim that cockfighting is a cultural and traditional native Hawaiian right protected under the Hawai'i Constitution."

Generally, courts have been hesitant to employ declaratory relief as to criminal matters. There are two general views as to the propriety of declaratory relief with respect to criminal matters. W.E. Shipley, *Validity, Construction, and Application of Criminal Statutes or Ordinances as Proper for Declaratory Judgment*, 10 A.L.R.3d 727, 1966 WL 15425 (2004). The first view is the traditional one, that declarative relief is inappropriate as to criminal matters. *Id. See also Schwartz v. O'Connell*, 124 N.Y.S.2d 397 (N.Y.Sup.Ct.1953) (noting that a court will

not grant declaratory judgment where its effect will be to restrain criminal prosecution, or to interfere with the enforcement of criminal law, particularly when facts are in dispute or open to different interpretations); *Witschner v. City of Atchison*, 154 Kan. 212, 117 P.2d 570 (1941) (holding that declaratory judgments should not be used as a restraint against criminal action).

The second view many jurisdictions have taken is that declarative relief should be limited to certain circumstances. This approach essentially incorporates the traditional view, but allows for certain exceptions. We have accepted such an approach. In *Pacific Meat Co.*, this court adopted the "Missouri rule" stated as follows:

> [T]he use of a declaratory judgment rests in the sound judicial discretion of the court, depending on the circumstances; ... that form of relief is usually unnecessary where a full and adequate remedy is provided by another well-known form of action; ... the purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations; ... *ordinarily it cannot be utilized as a device to circumvent the general rule that equity will not enjoin the enforcement of a valid criminal statute; neither will it be used to determine in advance precise rights existing between the public and law violators on particular facts where no special circumstances require it.*

47 Haw. at 655, 394 P.2d at 620 (emphases added) (quoting *Liberty Mut. Ins. Co. v. Jones,*[10] 344 Mo. 932, 130 S.W.2d 945, 953 (1939)). *See also Reed v. Littleton*, 275 N.Y. 150, 9 N.E.2d 814, 815 (1937) (stating that "[t]he rule has been firmly established that [the court] will not ordinarily intervene to enjoin the enforcement of the law by the

10. In *Liberty Mutual Ins. v. Jones*, 344 Mo. 932, 130 S.W.2d 945, 953 (1939), the issue was whether declaratory relief could be used to decide whether the "lay" employees of the plaintiffs (various insurance companies) were engaged in the unauthorized practice of law and in doing business in investigating and adjusting claims. The Missouri Supreme Court explained that a declaratory judgement should be used with cau-

tion and was not to be used as a substitute for all other remedies. *Id.* However, that court granted declaratory judgment because there "were questions of business conduct affecting the interests of a large part of the public" and "the criminal aspects of the case were unimportant as compared with its general import." *Id.* Those factors are not apparent in this case.

prosecuting officials ... unless under proper circumstances there would be irreparable injury, and the sole question involved is one of law ... where a clear legal right to the relief is established[ ]" (internal citations omitted)).

In *Pacific Meat Co.*, the plaintiff filed a bill in equity to enjoin the defendants from enforcing an act requiring labels to be affixed to all poultry and poultry products. The action was dismissed on the basis that "plaintiffs had an adequate remedy of law, *i.e., defending a criminal prosecution.*" *Pacific Meat Co.*, 47 Haw. at 654, 394 P.2d at 619 (emphasis added). The plaintiffs then refused to comply with the labeling requirements and were twice served with violation notices. *Id.* However, the defendants declined to bring criminal proceedings against the plaintiffs. *Id.* The plaintiffs then brought a suit for declaratory judgment to determine whether the act was unconstitutional.

In light of the defendant's adamant refusal to provide another "full and adequate remedy" to determine the plaintiffs' rights, this court allowed declaratory relief. *Id.* at 656, 394 P.2d at 621. After approving the "Missouri rule" quoted above, it was concluded that declaratory relief would be available under the circumstances. Identifying those circumstances, this court said that "the statute is *malum prohibitum,*[11] it affects a continuing course of business, and a method of testing the statute was not in fact available in the criminal court because the predecessors of the defendant refused to bring criminal proceedings." *Id.* at 656, 394 P.2d at 620.

## V.

As in the case of *Pacific Meat Co.*, courts have permitted declaratory relief in criminal matters where property rights have been directly affected, especially if a continuing course of business is involved. *See Sun Oil Co. v. Dir. of the Div. on the Necessaries of Life*, 340 Mass. 235, 163 N.E.2d 276 (1960) (declaratory relief granted when ongoing

business relations affected); *Stecher v. Houston*, 272 S.W.2d 925 (Tex.Civ.App.1954) (dismissing action for the stated reason that the validity of a criminal statute, without vested property rights involved, is exclusively in the criminal courts jurisdiction); and *Doyle v. Clark*, 220 Ind. 271, 41 N.E.2d 949 (1942) (allowing declaratory judgment to determine the constitutionality of a penal statute which affects business or occupation), *app. dismd.*, 317 U.S. 590, 63 S.Ct. 52, 87 L.Ed. 483.

On the other hand, it has also long been established that declaratory relief is not appropriate for criminal matters "where a full and adequate remedy is provided by another well-known form of action," particularly by testing the statute in a criminal proceeding. *Pacific Meat Co.*, 47 Haw. at 655, 394 P.2d at 620. Of the three factors set forth in *Pacific Meat Co.*, only one arguably exists in this case, which is that the ordinance and statute against cockfighting are *malum prohibitum.*

## VI.

Plaintiffs' request for declaratory relief does not involve a continuing course of business, as in *Pacific Meat Co. See Lane–Marvey Corp. v. McCaffrey*, 204 Misc. 166, 119 N.Y.S.2d 830, 833 (N.Y.Sup.Ct.) (noting that "[w]here the dominant purpose is to obtain immunity from criminal prosecution declaratory relief is unwarranted and interferes with the administration and enforcement of the laws[ ]"), *aff'd*, 282 A.D. 1013, 126 N.Y.S.2d 197, *app den.*, 283 A.D. 655, 127 N.Y.S.2d 809 (1954). And unlike in *Pacific Meat Co.*, where the defendants refused to bring criminal proceedings, Plaintiffs do not argue or demonstrate facts indicating that they are in a similar situation but, rather, aver to the contrary. Therefore, we conclude that this case lacks the special circumstances akin to considerations in *Pacific Meat Co.* that would warrant declarative action.[12]

---

11. *Malum prohibitum* is "[a]n act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral. Misdemeanors such as jaywalking and running a stoplight are *mala prohibita*, as are many regulatory violations." *Black's Law Dictionary* 978 (8th ed.2004).

12. In the cases cited by the concurring and dissenting opinion, the circumstances did not include that prosecution had been refused.

## VII.

While criminal proceedings may be inconvenient and costly, we agree with the State that it is the best forum to resolve all of the factual, statutory and constitutional questions that may arise in this case. *Cf. State v. Kaneakua*, 61 Haw. 136, 142, 597 P.2d 590, 593 (1979) (where defendants had stipulated to participating in cockfighting, HRS § 711–1109(1)(d) (1965 Repl.), pertaining to cruelty to animals, encompassed gamecocks and cockfighting but this court would not decide hypothetical cases "as applied to other persons in situations not before the court").

■ The relief that Plaintiffs request is essentially one of injunctive relief and would prohibit the State and County from enforcing HRS § 711–1109(1) and MCC § 9.08.010 against them. Such an injunction would greatly interfere with the enforcement of the law, especially in the determination of who should or should not be prosecuted. A declarative judgement in favor of Plaintiffs in this context would likely hinder enforcement of what are presumptively valid laws. *See State v. Adler*, 108 Hawai'i 169, 177, 118 P.3d 652, 660 (2005) (recognizing that "this court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt"); *State v. Kam*, 69 Haw. 483, 495, 748 P.2d 372, 380 (1988) (confirming that "[e]very enactment of the Hawaii Legislature is presumptively constitutional, and the party challenging a statute has the burden of showing the alleged unconstitutionality beyond a reasonable doubt[ ]"). As noted above, declaratory relief will not ordinarily be employed to determine the enforcement of criminal statutes, and in the absence of the particular circumstances like those in *Pacific Meat Co.*, we believe it is inappropriate here.[13]

## VIII.

For the foregoing reasons, the court's September 22, 2004 judgment and its August 31, 2004 findings, conclusions, and order granting Defendants' motion to dismiss complaint are vacated and the case is remanded to the court with instructions to (1) enter summary judgment in favor of the County on its motion and in favor of the State on its joinder to the County's motion and (2) enter judgment therein, in accordance with this opinion.

Concurring and Dissenting Opinion by
LEVINSON, J.

The majority appears to conclude that *Pacific Meat Co. v. Otagaki*, 47 Haw. 652, 655 n. 4, 394 P.2d 618, 620 n. 4 (1964), contemplates only two sets of circumstances in which a plaintiff has standing to test a criminal statute through a declaratory action: (1) where the statute "affects a continuing course of business" and (2) where the defendants in the declaratory action have "refused to bring criminal proceedings." See *id.*, 47 Haw. at 654, 656, 394 P.2d at 620; majority opinion at 236, 124 P.3d at 981. I respectfully disagree with the majority's implication that the freedom to risk prosecution in the future constitutes an adequate alternative to declaration. *Cf.* majority opinion at 236–37 & n. 12, 124 P.3d at 981–82 & n. 12. On the contrary, I believe that the threat of prosecution, in the absence of an actual case pending against the same plaintiff, may justify a declaratory judgment action.

By holding that the mere possibility of prosecution should deafen the circuit court to the appellants' prayer for declaratory relief, the majority leaves the appellants no opportunity to test the applicability of the statutes to their particular circumstances other than by incurring the risk, cost, and embarrassment of prosecution, thereby putting the appellants in such a position that "the only way to determine whether the suspect is a mushroom or a toadstool [would be] to eat it," Edwin M. Borchard, *The Constitutionality of*

---

13. Although the concurring and dissenting opinion maintains that our citation to *Pacific Meat Co. v. Otagaki*, 47 Haw. 652, 394 P.2d 618 (1964), "contemplates only two sets of circumstances in which a plaintiff has standing to test a criminal statute through a declaratory action[,]" concurring and dissenting opinion at 237, 124 P.3d at 982, Plaintiffs do not suggest circumstances other than those noted previously as grounds for departing from the ordinary rule against declaratory relief for criminal laws. Therefore, we need not decide what other circumstances would justify declaratory relief.

*Declaratory Judgments,* 31 Colum. L.Rev. 561, 589 (1931).[1] This "remedy" is not merely "inconvenient and costly" as the majority concedes, majority opinion at 237, 124 P.3d at 982; it is no remedy at all.

In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the plaintiff had stood on the grounds of a shopping center and distributed handbills protesting the Vietnam War. *Id.* at 455, 94 S.Ct. 1209. Though the plaintiff had been neither arrested nor charged for trespassing (the behavior proscribed by the challenged statute) the police had warned him to stop handbilling. *Id.* at 454 n. 1, 455, 94 S.Ct. 1209. Confronting the question whether the trial court should have entertained the plaintiff's declaratory action, the United States Supreme Court observed that "[a] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity," and concluded that "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 459, 462, 94 S.Ct. 1209. *See also Faulkner v. Keene,* 85 N.H. 147, 155 A. 195 (1931) (where plaintiffs wanted to erect filling station and sought declaration that this would not violate statute, noting that "[i]t is true that [the plaintiffs] might translate their claims into actions, and await prosecutions.... But that is precisely the dilemma from which [the declaratory judgment act] was designed to afford relief."); *Church of St. Paul & St. Andrew v. Barwick,* 67 N.Y.2d 510, 505 N.Y.S.2d 24, 496 N.E.2d 183, 201 (1986) (" '[The] general principle of ripeness law now is that a statute, regulation or policy statement is ripe for challenge when an affected person has to choose between disadvantageous compliance and risking sanctions.' " (quoting 4 Kenneth Culp Davis, *Administrative Law Treatise* § 25:1 (2d ed.1978)); *Sikora Realty Corp. v. Gill-*

*roy,* 37 Misc.2d 285, 132 N.Y.S.2d 240, 243 (N.Y.Sup.Ct.1954) (citation omitted) (noting that "[t]he plaintiff can assert the inapplicability of the ... requirements ... as a defense to any criminal prosecution" and holding that "[i]f that is a remedy at all, it is at best negative in character and ought not to be considered a sufficient reason for denying the plaintiff the right to declaratory relief").

The Alaska Supreme Court, in *Thomas v. Anchorage Equal Rights Comm'n,* 102 P.3d 937 (Alaska 2004), held that a "risk of prosecution" bestows standing upon a plaintiff. *Id.* at 942. Following *State v. Planned Parenthood,* 35 P.3d 30, 34 (Alaska 2001), the Alaska Supreme Court held that the risk of enforcement alone sufficed for standing, since the challenged law 'would require both doctors to change their current practices and would expose them to civil and criminal liability if they failed to comply.' " 102 P.3d at 942.

In the present matter, the appellants have not themselves endured prosecution under HRS § 711–1109(1) and/or MCC § 9.08.010. Nonetheless, "Kahaikupuna stated that ... he faces the 'real, immediate and adverse threat of criminal prosecution,' " majority opinion at 232, 124 P.3d at 977. Consequently, the appellants' interests in the challenged statutes lie somewhere between facing actual litigation—with its opportunities for case-specific statutory and constitutional interpretation—and mere curiosity. *See Dombrowski v. Pfister,* 380 U.S. 479, 489, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Klein v. Leis,* 146 Ohio App.3d 526, 767 N.E.2d 286, 291 (2002) ("Since the plaintiffs ... established that they or their members carry concealed weapons, ... [and] that they are subject to arrest for doing so, they had standing to seek a declaratory judgment."); *Eastern Books v. Bagnoni,* 446 F.Supp. 643, 645 (W.D.Pa.1978) (though "nothing ha[d] been threatened and no other prosecution or other action ha[d] yet been taken," holding that "in view of ... past harassment by the [c]ity ..., the seeds of a

---

1. Moreover, the regime imposed by the majority "may work a de facto censorship" by allowing the unchallenged statutes to deter possibly legal

activity. *See Zeitlin v. Arnebergh,* 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, 155 (1963).

ripening controversy are pending[,] and ... this would be a proper case for declaratory ... relief if a cause of action is otherwise made out"); *cf. Younger v. Harris,* 401 U.S. 37, 41–42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (where none of the plaintiffs "ha[d] been indicted, arrested, or even threatened by the prosecutor," declining "to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution"); *Gay & Lesbian Advocates & Defenders v. Attorney Gen.,* 436 Mass. 132, 763 N.E.2d 38, 41 (2002) (holding that actual controversy requirement not met where, "prior to exhibition, distribution, or any threat of prosecution, the plaintiff sought a declaration that a film was not obscene and that it would not be subject to prosecution if it exhibited or distributed it"). Whereas the majority would apply the same rule to this middle ground as applies to parties defending ongoing criminal prosecutions, I would decline to force these plaintiffs to risk punishment to determine the statutes' applicability to themselves.

Inasmuch as I would hold that the circuit court properly concluded that the appellants' suit for declaratory judgment was justiciable, I would affirm the circuit court's conclusion "that as a matter of law ... the [appellants] had standing," *see* majority opinion at 232, 124 P.3d at 977.

Nonetheless, I believe that the circuit court properly entered judgment in favor of the appellees on the merits. *See id.* at 232–33 n. 9, 124 P.3d at 977–78 n. 9. Although I would reach the same substantive outcome as the majority, the appellants' action warrants greater assurance of the validity of the statutes.